**METADURE CORPORATION, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Nos. 463–81C, 36–82C.**

United States Claims Court.

Aug. 15, 1984.

---

John C. Schnaufer, Long Island City, N.Y., for plaintiff.

Ronald A. Schechter, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

## OPINION

NETTESHEIM, Judge.

The issue presented on review under the Wunderlich Act, 41 U.S.C. §§ 321–322 (1982), is the finality to be accorded two decisions of the Armed Services Board of Contract Appeals (the "ASBCA"). The first decision dismissed three appeals with prejudice and entered a preclusive order preventing Metadure Corporation ("plaintiff") from introducing evidence to contest a default termination. The second decision awarded Defense Logistics Agency, Defense Contract Administration Services Region, New York ("DCASR"), $208,961.62 on its claim of overpayment through progress payments.[1]

## FACTS

On October 14, 1976, plaintiff contracted with DCASR to supply 226 nitrogen trailers for $1,240,740. Encountering performance difficulties, plaintiff on March 7, 1979, made its sole delivery of 26 tanks. On November 20, 1979, the Army issued its decision terminating the contract for default. Three claims emanating from the Changes clause and plaintiff's challenge to the default termination led to the four appeals that plaintiff filed with the ASBCA

---

1. Although it is true, as defendant contends, that plaintiff's petition did not seek review of the ASBCA's decision on the counterclaim, plaintiff's answer to the counterclaim disputed quantum. Liability was contested by the petition insofar as plaintiff sought review of the order disallowing the introduction of evidence to contest a default termination.

on July 20, 1978; May 29, 1979; December 13, 1979; and December 31, 1979, respectively. DCASR's counterclaim for unliquidated progress payments of $208,961.62 was asserted with respect to the last-filed appeal. The ASBCA's opinion on plaintiff's appeals details the history of the litigation and is entirely consistent with the administrative record. *Metadure Corp.*, ASBCA Nos. 23121, 23906, 24509, 24533 (Dec. 8, 1981).[2]

The discovery dispute which engendered the sanctions of dismissal and the preclusionary order began on March 4, 1980, when the ASBCA held a pre-hearing conference with respect to plaintiff's claims. The transcript of that hearing reveals that plaintiff already had defaulted in answering outstanding discovery requests on certain of its claims. Samuel Hassine ("Hassine"), plaintiff's then-executive vice president and secretary/treasurer, represented plaintiff at the hearing. Hassine was one of two players in an internecine corporate struggle, and he managed plaintiff's appeals before the ASBCA until approximately seven weeks before they were extinguished by the imposition of sanctions.

At the conclusion of the March 4, 1980 hearing, the administrative law judge directed plaintiff by May 6 to provide DCASR full access to all of its books and records. The transcript leaves no doubt that Hassine understood both the concept of sanctions and that he was the recipient of a directive to comply with discovery. DCASR by letter of May 2, 1980, requested access to plaintiff's books and records. On May 19 plaintiff replied that discovery could have commenced "any time" after March 4, 1980. "All you need to do is call appellant the day before the desired dis-

covery date...." On May 28 DCASR confirmed June 2 as the discovery date. Plaintiff subsequently cancelled this date.

By letter dated June 2, 1980, plaintiff, by its president Lawrence F. Brinster ("Brinster"), the second player, acknowledged that plaintiff had completed discovery of DCASR. According to a June 27 letter from DCASR, Brinster received approximately 800 pages of documents on June 24.

DCASR on June 12, 1980, reissued its request to set another discovery date. On July 24 DCASR wrote plaintiff confirming July 31 as the date for commencing discovery of plaintiff's books and records. That date was cancelled by Brinster on July 30 because Hassine had a headache. DCASR on August 14, 1980, announced August 19 as the date for discovery, and plaintiff did permit discovery for one day on August 19. This discovery, as DCASR advised the ASBCA and plaintiff did not contest, was limited to familiarizing DCASR personnel with plaintiff's filing system. At the request of plaintiff, discovery was suspended pending resolution of an unrelated Metadure appeal before the ASBCA on November 12, 1980. Plaintiff also moved on October 9, 1980, to suspend proceedings while it appealed denial of access under the Freedom of Information Act (the "FOIA") to eight documents withheld by DCASR.

DCASR proposed on February 9, 1981, that discovery resume on February 23. Hassine advised DCASR by telephone on February 19 that discovery could not take place. On March 2, 1981, DCASR moved before the ASBCA for an order compelling plaintiff to permit discovery or, alternatively, to show cause why its appeals should not be dismissed for lack of prosecution.

**2.** On July 27, 1981, plaintiff filed No. 463–81C seeking review of the contracting officer's October 29, 1980 letter demanding $208,961.62 for overpayment of progress payments. This petition also asked for consolidation by the former United States Court of Claims of the four appeals then pending before the ASBCA. Defendant moved for dismissal because the October 29, 1980 letter was not an appealable decision and alternatively sought transfer of the petition to the ASBCA. Before the ASBCA issued its deci-

sion on DCASR's counterclaim, the Court of Claims on April 30, 1982 referred defendant's motion to the panel that was to consider defendant's dispositive motion to be filed in No. 36–82C. That motion would have argued that plaintiff's appeal of the default termination decision was interlocutory. Counsel for the parties now take the position that nothing remains in No. 463–81C to be resolved apart from the issues raised in No. 36–82C.

Plaintiff on April 10, 1981, argued that it had not failed to prosecute its appeals and requested suspension of the appeals until the ASBCA ruled on plaintiff's motion to compel DCASR to disclose the documents that had not been turned over under the FOIA request. On April 20 the ASBCA denied plaintiff's October 9, 1980 motion to suspend the appeals. Thereafter, on May 4, 1981, the ASBCA upheld DCASR's position that the documents were insulated from discovery by the attorney-client privilege. Both the April 20 and May 4 orders directed the parties to proceed with discovery, which DCASR proposed should begin on May 18. Instead, briefing on plaintiff's motion to compel continued with plaintiff arguing that its FOIA action in federal court, in which plaintiff had moved to have DCASR enjoined from proceeding with prosecution of the appeals, justified suspension of the ASBCA proceedings. On July 17, 1981, the ASBCA entered an order which provided in pertinent part:

> Appellant is directed within 30 days of receipt of this Order to provide in full, complete and total access to its records during the time period of this contract involved in these appeals. This Order is not limited to what appellant alone considers relevant to these four appeals, but shall include all of appellant's records during the time frame of the contract involved in these four appeals. Should appellant fail to provide full, complete, and total access to its records the Board shall dismiss these four appeals with prejudice for failure to comply with orders of this Board.

DCASR on July 21, 1981, demanded access to plaintiff's records on July 28. Hassine by telephone notified DCASR that July 28 was unacceptable and stated that he would advise DCASR of an acceptable date. On July 28 plaintiff sought reconsideration of the ASBCA's July 17 order. Upon the opposition of DCASR, the ASBCA denied the reconsideration request on August 3, 1981, noting that the filing in the Court of Claims of No. 463–81C did not divest it of jurisdiction. This time DCASR proposed a discovery date of August 20,

and on August 20 an additional day of discovery was conducted at plaintiff's facility. On September 4, 1981, DCASR requested that discovery continue on September 11, 1981. The parties at this point were discussing settlement, but DCASR would not agree to suspend discovery and suggested continuing discovery on September 16, 1981. On September 21, DCASR moved to dismiss plaintiff's four appeals with prejudice based on the July 17 order. On September 23, 1981, the ASBCA requested that plaintiff show cause within 30 days why DCASR's motion should not be granted.

Despite the fact that Brinster signed pleadings dated before July 17, 1981; wrote DCASR concerning discovery; and picked up documents provided by DCASR, Brinster claims in this court that Hassine directed and controlled litigation and operations for plaintiff from March 4, 1980, to July 17, 1981, when the ASBCA entered its final order compelling discovery and warning of dismissal if plaintiff failed to obey that order. Hassine represented in the March 4, 1980 hearing before the ASBCA that plaintiff, in fact, consisted of Brinster and himself and three clerks. Under these circumstances Brinster cannot insulate himself from Hassine's management of the ASBCA appeals. At any rate, in July and August 1981, according to the administrative record, Brinster made his dissatisfaction with Hassine known to the latter and instituted efforts to oust him.

Brinster wrote the ASBCA on October 14, 1981, that he had "been delegated full and complete responsibility for the handling of the administrative and legal functions of Metadure Corporation." Brinster also stated, "On 7 October 1981 the undersigned personally visited DCASR New York and advised ... [counsel] that all the books and records as ordered by the Board on subject appeals would be promptly made available for discovery." After DCASR expressed skepticism that plaintiff would allow discovery, Brinster replied on November 5, 1981, stating that DCASR knew that Hassine's employment had been terminated

by plaintiff's board of directors on October 23, 1981. He also advised that plaintiff's counsel was preparing papers to seek an order restraining Hassine from interfering in the operations of plaintiff and "[prayed] that the ASBCA will see fit to provide fair and reasonable conditions which will permit referenced appeals to be pursued."

On November 13, 1981, Brinster advised the ASBCA that a show cause order had been filed on November 10, returnable on November 16. Finally, on November 17 Brinster wrote the ASBCA that the court issued a bench ruling on November 16 restraining Hassine "from interfering in any way with the operations of Metadure Corporation." A signed copy of the order was promised. The record before the ASBCA stops here. Brinster claims in this court that a letter dated December 3, 1981, was sent to the ASBCA explaining that counsel had not presented the restraining order for signature "because of time pressures" and that Hassine was continuing litigation to regain control of plaintiff.

The ASBCA ended this litany with its opinion on December 8, 1981, dismissing the three appeals arising from the Changes clause and entering the preclusionary order on the appeal of the default termination. In so doing, the ASBCA noted: "Appellant, in its responses, has not denied that it has not complied with the Board's order dated 17 July 1981. Appellant has also not shown good cause why it has failed to comply with the Board's order." *Metadure Corp.*, ASBCA Nos. 23121, 23906, 24509, 24533 at 5 (Dec. 8, 1981).

On May 10, 1982, the ASBCA conducted a hearing on liability and quantum with respect to DCASR's counterclaim. Brinster represented plaintiff on this occasion and, although he was prevented by the order entered upon the December 8, 1981 opinion only from introducing any evidence on his own or through DCASR to excuse the termination for default, Brinster also offered no evidence on damages in opposition to DCASR's proof. In a particularly fact-intensive analysis, the ASBCA sustained DCASR's counterclaim in the amount of $208,961.62. *Metadure Corp.*, ASBCA No. 24533 (Feb. 28, 1983).

## DISCUSSION

The Board's two decisions will be upheld unless they are "fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or ... [are] not supported by substantial evidence." 41 U.S.C. § 321. Thus, the matter for decision is whether substantial evidence supports the sanctions of dismissing the appeals with prejudice and of precluding the introduction of evidence on the default termination or whether the ASBCA's actions were arbitrary or capricious.

*Evidence of Inexcusable Delay*

The ASBCA is faulted by plaintiff for disregarding or ignoring Brinster's proffered evidence of plaintiff's "internal management problem" which prevented it from timely complying with the discovery order and which should have been considered as mitigating circumstances. On the contrary, the ASBCA's December 8, 1983 opinion, in stating that plaintiff failed to show good cause for not complying with the July 17 order, necessarily referred to plaintiff's response to the show cause order. That response consisted, among other documents, of the October 14 and November 5, 13, and 17 letters from Brinster which asserted, respectively, that plaintiff would "promptly" make records available; that plaintiff was seeking to remove Hassine from the corporate picture; that Hassine had been restrained from interfering in plaintiff's corporate affairs; and that the bench ruling restraining Hassine had been obtained, but that the order was still unsigned.

The December 3, 1981 letter, advising that plaintiff's attorney had not obtained a signed restraining order and that Hassine was continuing litigation to regain his positions, comes into this proceeding via a recent affidavit of Brinster, still president of plaintiff. Defendant, however, contends that a Wunderlich Act review must be confined to evidence in the administrative record. *Northbridge Electronics, Inc. v.*

*United States,* 195 Ct.Cl. 453, 463, 444 F.2d 1124, 1130 (1971); *see Truong Xuan Truc v. United States,* 212 Ct.Cl. 51, 57 n. 6 (1976).

The dispute can be resolved without ruling on defendant's request to strike the Brinster affidavit and its attachments that are not a part of the administrative record, because the ASBCA opinion stated that consideration was given to the salient facts which plaintiff claims the ASBCA disregarded. Even assuming *arguendo* that the absence of the December 3, 1981 letter (which indicated that the restraining order itself had not been obtained and that Hassine was *continuing his litigation efforts*) should have been considered, but was not, plaintiff did nothing after its response to the show cause order on October 14, 1981, to show the ASBCA why it could not promptly make available its records for inspection. In short, plaintiff never attributed its alleged inability to produce its books and records for inspection to any actions of Hassine. The most that plaintiff asserted before the ASBCA is that "many of the litigation files have been removed from Metadure's office, and Brinster, since July [1981], has requested Hassine to return the files...." Affidavit of Lawrence F. Brinster ¶ 11, *Hassine v. Spen, et al.,* 81 Civ. 2626 (E.D.N.Y., filed Oct. 22, 1981). Hassine's penchant for litigation was fierce, and, since many pending lawsuits had been initiated by plaintiff, it is unclear whether Hassine sequestered the litigation files covering plaintiff's four appeals before the ASBCA.

▆▆ Record support simply is lacking for plaintiff's assertion that the ASBCA ignored or disregarded the internal problems encountered by plaintiff. However, there was no evidence—and only conjecture—to substantiate the proposition that

Hassine controlled plaintiff's books and records, which were apparently stored in different places, to such an extent that plaintiff could not have made them promptly available for inspection, as Brinster promised. In these circumstances the ASBCA's finding that plaintiff had not shown good cause for its failure to comply with the July 17, 1981 discovery order is supported by substantial evidence.

*Discretion of Administrative Law Judge To Impose Sanctions*

In attacking the severity of the sanctions as a matter of fact and law, plaintiff runs up against the formidable barrier of *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 640–41, 96 S.Ct. 2778, 2779–80, 49 L.Ed.2d 747 (1976). The Supreme Court upheld the sanction of dismissal imposed on plaintiffs for failure to answer interrogatories over a 17-month period, even after numerous extensions had been granted and the court had warned that continued failure to comply would lead to the imposition of sanctions. *See White Mountain Apache Tribe v. United States,* 5 Cl.Ct. 288 at 293–95 (1984) (order imposing monetary sanction for failure to make discovery) (quoting *National Hockey League* ).[3] Although the delay in this case was over 17 months, plaintiff replies that *National Hockey League* is distinguishable because there no excuse was made for the failure to comply with outstanding discovery requests. In this case an excuse was made, but the ASBCA concluded that good cause had not been shown for denying DCASR's motion to dismiss with prejudice.

▆▆ Plaintiff argues that the sanction of dismissal was arbitrary and capricious. A court's inherent power enables it to invoke dismissal as a sanction in situations

---

**3.** Plaintiff concedes that because of the similarity between ASBCA Rule 35 and Fed.R.Civ.P. 37, cases interpreting the rule regarding discovery sanctions under the Federal Rules may be used to determine whether the discovery sanctions imposed by the ASBCA are arbitrary or an abuse of discretion.

The ASBCA rule reads:

35. *Sanctions*

If any party fails or refuses to obey an order issued by the Board, the Board may then make such order as it considers necessary to the just and expeditious conduct of the appeal.

32 C.F.R. App. A, at 435 (1982).

involving disregard of orders. *Link v. Wabash R.R.*, 291 F.2d 542, 546–47 (7th Cir. 1961), *aff'd*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). The ASBCA is not a court. However, the case management authority of the ASBCA's administrative law judges is no different from that of federal trial courts which, by virtue of their case management authority, are given broad discretion to manage the litigation on their dockets. *Link v. Wabash R.R.*, 291 F.2d at 547. This discretion is accorded substantial deference by reviewing courts. *Kerotest Manufacturing Co. v. C-O-TWO Co.*, 342 U.S. 180, 183–84, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952); *Landis v. North American Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936). In consequence the trial court has great leeway in formulating orders to control discovery. *City of Cleveland v. Krupansky*, 619 F.2d 572, 575 (6th Cir.), *cert. denied*, 449 U.S. 834, 101 S.Ct. 106, 66 L.Ed.2d 40 (1980); *Admiral Theater Corp. v. Douglas Theater Co.*, 585 F.2d 877, 889 (8th Cir.1978).

The presiding administrative law judge took control of plaintiff's four appeals, explored with Hassine in the March 4, 1980 hearing the parties' discovery needs and how best to meet them, secured from Hassine an agreement to produce plaintiff's records within 60 days, and scheduled a hearing based on the shared understanding that discovery would be completed seasonably. An administrative law judge, as any trial court, must allocate his resources to meet the demands of a heavy docket. Flagrant abuse of discovery orders delays adjudication of claims by disrupting the trial calendar, so that the judge may not have a matter to be tried on the scheduled days to substitute for the case that is not ready for trial. Squandering trial time is unfair to other litigants who await trial of their claims. The administrative record here consists primarily of voluminous submissions dealing with a major discovery dispute concerning not the nature or scope of discovery, but whether plaintiff would allow discovery to be completed. Squandering the resources of the administrative tribunal in this fashion is also unfair to other litigants.

In this case the presiding judge spent over four hours of hearing time establishing the type, sequence, and deadlines for discovery on all of plaintiff's claims. The judge explained to Hassine that sanctions would be imposed for delay, because plaintiff had already failed to respond to two sets of interrogatories as of the hearing date. The court also announced that sanctions would be imposed for failure in the future to comply with the judge's directives. Not only was plaintiff warned in March 1980 that sanctions would be imposed for failure to allow discovery, but plaintiff was allowed almost five months after the July 17, 1981 order compelling discovery before sanctions were imposed, and, even then, plaintiff was afforded a final opportunity to show cause why its appeals should not be dismissed. The ASBCA demonstrated patience and reasonableness in managing these appeals.

■ The decision to dismiss for failure to comply with an order is within the discretion of the trial court. *Fendler v. Westgate California Corp.*, 527 F.2d 1168, 1170 (9th Cir.1975). No attorney was involved in the proceedings before the ASBCA. Therefore, the caveat that dismissal should not be employed where an attorney is at fault and the party is not to blame does not apply. *See Silas v. Sears Roebuck & Co.*, 586 F.2d 382, 385 (5th Cir.1978); *Industrial Building Materials Inc. v. Interchemical Corp.*, 437 F.2d 1336, 1339 (9th Cir. 1970). In the instant case, the administrative law judge was sensitive to the needs of the *pro se* plaintiff and repeatedly warned of the possibility of sanctions. *See Witt v. United States*, 681 F.2d 1144, 1149 (9th Cir.1982).

■ Dismissal with prejudice is appropriate where there is a clear record of delay. *Martin-Trigona v. Morris*, 627 F.2d 680, 687 (5th Cir.1980); *Lang v. Wyrick*, 590 F.2d 257, 259 (8th Cir.1978). Nor need the trial court exhaust all the available sanctions short of dismissal before finally dismissing the case. *See Von Poppenheim v. Portland Boxing & Wrestling Commission*, 442 F.2d 1047, 1053–54 (9th Cir.), *cert.*

*denied,* 404 U.S. 1039, 92 S.Ct. 715, 30 L.Ed.2d 731 (1971); *In re "Santa Barbara Like It Is Today," Copyright Infringement Litigation,* 94 F.R.D. 105, 109 (D.Nev.1982). In certain situations, such as the one at bar, the use of harsh sanctions is required in order to protect the integrity of the tribunal and its orders. *See Fendler v. Westgate California Corp.,* 527 F.2d at 1170; *U.S.N. Co. v. American Express Co.,* 55 F.R.D. 31, 37 (E.D.Pa. 1972). Dismissal of the appeals with prejudice in the circumstances of this case thus serves the needs of the administration of justice. *See National Hockey League,* 427 U.S. at 643, 96 S.Ct. at 2781; *O'Brien v. Sinatra,* 315 F.2d 637, 641 (9th Cir.1963).

Furthermore, the administrative law judge acted well within his authority in imposing a preclusionary sanction with respect to the fourth appeal because of plaintiff's willful failure to comply with the July 17, 1981 order. *Rosemount Inc. v. Bechman Instruments, Inc.,* 727 F.2d 1540, 1549–50, (Fed.Cir.1984); *Insurance Corp. of Ireland, Ltd. v. Compagnie Des Bauxite de Guine,* 456 U.S. 694, 707–09, 102 S.Ct. 2099, 2106–08, 72 L.Ed.2d 492 (1982); *Admiral Theatre Corp. v. Douglas Theatre Corp.,* 585 F.2d at 889.[4]

*Defendant's Counterclaim*

With respect to defendant's counterclaim, plaintiff made no effort in the May 10, 1982 hearing, nor on brief, to identify

---

**4.** Plaintiff places heavy reliance on *Emerick v. Fenick Industries, Inc.,* 539 F.2d 1379 (5th Cir. 1976), which it claims stands for the proposition that when a party demonstrates that the failure to comply with discovery directives was due to reasons beyond its control, dismissal by the court is an abuse of discretion. Dismissal with prejudice of a plaintiff's suit "is available only in extreme circumstances." 539 F.2d at 1381. However, the court upheld the trial court's finding that defendant was "in 'flagrant disregard'" of its orders. *Id.* The ASBCA's finding that plaintiff failed to show cause why its appeals should not be dismissed is entitled to the same deference, absent any indication of abuse of discretion.

The four other cases relied on by plaintiff are easily distinguishable from the case at bar. For example, in *M.T.F. Industries, Inc.,* 73–2 B.C.A. (CCH) ¶ 10,145, the board did not impose sanctions because the contractor's failure to comply with a discovery order was "attributable in part to carelessness and was not willful." *Id.* at

any factual or legal shortcomings in the ASBCA's decision.

## CONCLUSION

Based on the foregoing, defendant's cross-motion for summary judgment is granted and plaintiff's is denied. The Clerk of the Court will enter judgments dismissing the petition in each case and judgment for defendant in No. 36–82C in the amount of $208,961.62.

IT IS SO ORDERED.

Costs to the prevailing .party. *See* 28 U.S.C. § 2412(a)(1982); RUSCC 54(d).

47,711. The reason that the court declined to impose sanctions on plaintiff in *Backos v. United States,* 82 F.R.D. 743 (E.D.Mich.1979), for refusal to answer interrogatories was its fear of burdening plaintiff's exercise of fifth amendment rights. In *Columbia Merchandise Co.,* 59–2 Cont.App.Dec. (CCH) ¶ 10,599, the "mitigating circumstances" that militated against dismissal did not consist of willful failure to comply with the board's orders, but ignorance of the appeals process. Finally, in *Kropp v. Ziebarth,* 557 F.2d 142 (8th Cir.1977), although defendant deemed plaintiff's answers to certain interrogatories inadequate, the court credited plaintiff's explanation that he was unable to respond more fully. The court did state that dismissal is not authorized when the failure to comply is "the result of inability rather than willfulness or bad faith," 557 F.2d at 147, but the record before the ASBCA was more consistent with willfulness in not complying than inability to comply with the ASBCA's orders.