**GRIFFIN & DICKSON, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 57–86C.**

United States Claims Court.

Feb. 24, 1989.

Ray Goddard, New York City, atty. of record, for plaintiff.

Stephen McHale and Elaine J. Guth, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

RADER, Judge.

This case, arising under the Wunderlich Act, 41 U.S.C. §§ 321–322 (1982), requires this court to determine the finality to be accorded a decision of the Department of Agriculture Board of Contract Appeals (AGBCA or Board). The plaintiff, Griffin & Dickson, sought from the Board adjustments of $371,345.53 on a channel improvement contract with the Soil Conservation Service. After more than ten years of litigation before the Board, the AGBCA dismissed the plaintiff's appeal with prejudice for failure to comply adequately with the Board's pretrial order on proof of costs. The entire proceeding before the AGBCA is an unfortunately deficient model of fair and expeditious administration of justice on the part of the Board, and a similarly deficient model of dedication to litigative obligations on the part of the parties[1]. This case was transferred to this court for decision on October 17, 1988.

## FACTS

In October 1971, the plaintiff entered into a contract with the Soil Conservation Service to improve the channels of Denton Creek in Wise County, Texas. The contract initially specified a price of $396,071.30 and a completion date of November 23, 1972. After changes, the total contract price was ultimately increased to $454,951.35. The contract work was completed and accepted by the Government on January 4, 1974.

On April 24, 1974, the plaintiff submitted four claims to the contracting officer totalling $371,345.53. The claims sought additional compensation for alleged differing site conditions and work delays caused by the Government's refusal to permit night work. On November 4, 1974, the contracting officer denied all four claims.

A few months later, Griffin & Dickson timely appealed the contracting officer's final decision to the AGBCA. The Board, in its decision dismissing the appeal with prejudice, describes the ensuing proceedings:

> After a number of years during which there have been several evidentiary proceedings on the issues of entitlement, pretrial conferences, unsuccessful settlement negotiations, and numerous conference calls, there are still issues that remain to be tried. There have been considerable delays in the proceedings, some of which have resulted from the need for the Government to appoint new counsel several times due to changes in employment (there have been four different attorneys assigned to this matter over the years), and some of which resulted from inaction or untimely action by Appellant's counsel.[2]

*Griffin and Dickson*, AGBCA No. 74–104–4, 86–1 BCA (CCH) ¶ 18,601 at 93,374 (Opinion) [1985 WL 17213]. The AGBCA's

---

1. During oral argument, this court requested the parties to supply a history of the 10 years of proceedings before the Board. Some highlights from that record include:

| | |
|---|---|
| June 19, 1975 | Complaint filed at AGBCA. |
| January 16, 1976 | Answer filed. |
| July 17–21, 1978 | First hearings before Judge Jewel Lewis. |
| July 1978–Apr. 1980 | Five letters exchanged and one deposition taken. |
| April 8–11, 1980 | Hearings before Judge Lewis. |
| Apr. 1980–Jan. 1985 | Twenty letters and communications exchanged; prehearing conference and mid-hearing statement filed. |
| January 14, 1985 | Government's Pretrial Order on Proof of Costs filed. |
| May 10, 1985 | Plaintiff's Pretrial Order on Proof of Costs filed. |
| December 12, 1985 | Dismissed with Prejudice. |

2. In argument, the plaintiff strongly contests this characterization suggesting that the record lacks any basis for the assertion that it was responsible for "inaction or untimely action."

ruling contains no further explanation for over ten years of unresolved litigation before the Board. Indeed, after ten years, the litigation remained mired in pretrial proceedings.

On December 13, 1984, the Board, by letter, ordered the Government's counsel to submit a suggested proof of costs statement or initiate an audit of plaintiff's books and records. The Government submitted its proposed proof of costs order on January 14, 1985. On January 25, 1985, the Board adopted the order and directed the plaintiff's counsel to submit its own proof of costs by February 8, 1985.

The plaintiff maintains that "unanticipated difficulties," including "the inability to find all of plaintiff's records, the magnitude of the task and the fact that plaintiff initially thought only entitlement was involved in the hearings, major construction within the offices of the plaintiff's counsel, plaintiff's accountant's obligations with other clients on tax matters during this period and the illness of one of the plaintiff's partners," prevented compliance with the two-week deadline. Pl. Findings filed Oct. 6, 1986, ¶ 15. When the deadline had passed for the plaintiff to respond to the Board's order, the Government, on May 3, 1985, requested the Board, pursuant to Rule 25(b) of AGBCA rules, to dismiss the plaintiff's appeal for failure to prosecute[3]. The Board, by a 7 May 1985 letter, served the Government's motion on the plaintiff and simultaneously afforded the plaintiff until May 15, 1985, to "fully comply with the Pretrial Order on Proof of Costs issued on January 25, 1985 or show good cause why this appeal should not be dismissed for failure to prosecute."

Meanwhile, on May 6, 1985, the plaintiff mailed its proof of costs document to the Board which was received on May 10, 1985.

Thus, the plaintiff met the May 15 deadline extended by the Board's May 7 letter. The plaintiff's document consisted of 41 pages, including 37 pages of schedules with exhibits. The total amount shown in this proof of costs submission was $410,061.96.

On July 23, 1985, the Government, at the Board's request, responded to the plaintiff's Proof of Costs submission. Charging that the plaintiff's document was not "a sufficient substitute for the appellant's Books and records, and moreover, that the appellant failed to comply with the letter or intent of the Board's Order," the Government renewed its motion to dismiss the action. At that point, the Board, by order dated July 25, 1985, afforded the plaintiff ten days "to explain to the Board how its Proof of Costs is in full and proper compliance ... and why the Government's Motion to Dismiss should not be granted."

The plaintiff responded on August 7, 1985, with a Memorandum of Compliance. The plaintiff's Memorandum explained:

> Appellant has chosen to prove its equipment costs for each major piece of machinery or equipment utilized in the job by means other than its books of account and other financial records, as permitted under Paragraph 1(b) as a small contractor.... Appellant's financial records do not reflect Appellant's actual equipment costs. For example, the books do not reflect, in most instances, the actual acquisition cost of a particular piece of equipment because other equipment was traded in by Appellant, and only the difference is recorded on Appellant's books, i.e., Appellant's 88B dragline had an actual cost of $160,000.00, but only $126,-765.00 is recorded on Appellant's books because used equipment was traded in by Appellant. Nor do the books show, for

---

**3.** AGBCA Rule 25(b) states in pertinent part: (b) *Failure to Prosecute.* Whenever a record discloses the failure of either party to file documents required by these rules, respond to notices or correspondence from the presiding officer, comply with orders of the presiding officer, or otherwise indicates an intention not to continue the prosecution or defense of an appeal, the presiding officer may issue an order requiring the offending party to show

why the appeal should not be either dismissed or granted as appropriate. *If the offending party shall fail to show cause, the presiding officer may issue an Order of Dismissal for failure to prosecute or take such other action deemed reasonable and proper under the circumstances.* (Emphasis added.) AGBCA Rule 25(b), as shall be discussed later, differs from RUSCC 41(b) and Fed.R.Civ.P. 41(b).

example, the cost of the dragline bucket on the 88–B, any mobilization, or all of the transportation costs. Further, Appellant's books do not show any repair costs on any of the equipment.... Based upon the Appellant's years of experience in operating the type of machinery and equipment involved, the Appellant has determined that the method of proof utilized in its proof of costs will establish the equipment ownership costs and operations expense of the machinery and equipment in a more accurate and equitable manner.

Appellant's Memorandum of Compliance, filed August 7, 1985, at 2–3.

The plaintiff reiterated that "under the terms of the Board's Show–Cause Order, Appellant had complied with same." Appellant's Response to the Government's Motion, filed August 7, 1985, at 2. With regard to the tardiness of its original proof of costs submission, the plaintiff apologized and noted that "[a]ppellant's counsel was of the erroneous belief, founded upon prior experience with the Government's counsel, that Government's counsel having previously been late in his responses to the Notices or orders of this Honorable Board would exhibit some reciprocal understanding to Appellant." *Id.* at 3. Finally, the plaintiff indicated a willingness to prosecute its appeal without further delay.

The Board, however, was not satisfied with the explanations contained in the plaintiff's brief. In a December 4, 1985 opinion, the AGBCA concluded that the plaintiff had failed to comply fully with the Board's pretrial order. Accordingly, the appeal was dismissed with prejudice. In January 1986, Griffin & Dickson filed a complaint in this court seeking Wunderlich Act review of the AGBCA's decision. The plaintiff contends that the Board's decision was arbitrary, capricious, unsupported by substantial evidence, and erroneous as a matter of law. The defendant supports the action as an inherent power of the Board which was exercised discretely and appropriately.

## DISCUSSION

The Wunderlich Act requires this court to respect the finality of the Board's decisions unless they are "fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or ... [are] not supported by substantial evidence." 41 U.S.C. § 321. In this case, this court must decide if the Board's decision to dismiss with prejudice was arbitrary or an abuse of discretion. *Des Vignes v. Department of Transp.*, 791 F.2d 142, 143 (Fed. Cir.1986). In making that decision, this court is obliged to accept the findings of fact of the Board unless those findings are arbitrary, capricious, based upon less than substantial evidence, or rendered in bad faith. *Riverside Research Inst. v. United States*, 860 F.2d 420, 422 (Fed.Cir.1988); *American Elec. Laboratories, Inc. v. United States*, 774 F.2d 1110, 1112 (Fed. Cir.1985). Decisions of the Board on questions of law are reviewable for error. *Riverside Research Inst.*, 860 F.2d at 422.

### Standard of Review for Orders of Dismissal

■ A court possesses the discretionary power to dismiss actions as a sanction for disregard of orders or failure to prosecute. *Julien v. Zeringue*, 864 F.2d 1572 (Fed.Cir. 1989); *Anchor Estates, Inc. v. United States*, 11 Cl.Ct. 578 (1987); RUSCC 41(b). This authority is inherent in a court's power to manage its docket and prevent undue delays in the disposition of pending cases. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). Although the AGBCA is not a court, the United States Claims Court has ruled that the significant case management responsibilities of the Armed Services Board of Contract Appeals (ASBCA) require broad discretion to impose sanctions. *Metadure Corp. v. United States*, 6 Cl.Ct. 61 (1984). The AGBCA, like the ASBCA, possesses authority to impose sanctions corresponding to the inherent case management powers exercised by federal trial courts.

■ Federal trial courts and the AGBCA, however, should employ severe sanctions, such as dismissal, with great circumspection and extreme care. When a

federal trial court imposes the "harsh sanction" of dismissal, an appeals court is empowered to examine the action for abuse of discretion. *Kadin Corp. v. United States*, 782 F.2d 175, 176 (Fed.Cir.1986). Similarly, the Wunderlich Act requires this court to apply the same standard in examining Board decisions for arbitrariness. Wunderlich Act review requires this court to hold boards to the same standards that federal trial courts are expected to obey when exercising dismissal powers. *Metadure*, 6 Cl.Ct. at 67.

Federal courts have imposed upon themselves a strict discipline which reserves the final dismissal sanction "for the most egregious of cases, usually cases where the requisite factors of clear delay and ineffective lesser sanctions are bolstered by the presence of at least one of the aggravating factors." *Rogers v. Kroger Co.*, 669 F.2d 317, 320 (5th Cir.1982). The potential aggravating factors are delay resulting from intentional conduct, delay caused by the plaintiff personally, and delay causing prejudice to the defendant. *Boudwin v. Graystone Ins. Co.*, 756 F.2d 399 (5th Cir.1985); *Morris v. Ocean Sys. Inc.*, 730 F.2d 248 (5th Cir.1984). In the event of a failure to comply with court orders, these aggravating factors would be recast as disregard for orders resulting from intentional conduct, disregard caused by the plaintiff personally, and disregard causing prejudice to the defendant. These aggravating factors tend to substantiate that abusive delays or disregard for the court's orders are sufficiently egregious to warrant the most severe sanction.

Among these aggravating factors, intentional disregard occupies a place of particular prominence. The Claims Court has acknowledged that "dismissal appropriately is reserved for willful disobedience of court orders." *White Mountain Apache Tribe v. United States*, 5 Cl.Ct. 288, 294 (1984), *vacated on other grounds*, 776 F.2d 1063 (Fed.Cir.1985), citing *State Exchange Bank v. Hartline*, 693 F.2d 1350, 1352 (11th Cir. 1982).

A federal trial court must also consider lesser sanctions before dismissing with prejudice. *Boudwin*, 756 F.2d at 401. Dismissal is generally inappropriate where lesser sanctions are available to the court. *John v. Louisiana*, 828 F.2d 1129 (5th Cir. 1987). Some lesser sanctions include:

> Assessments of fines, costs, or damages against the plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings are preliminary means or less severe sanctions that may be used to safeguard a court's undoubted right to control its docket.

*Rogers*, 669 F.2d at 321–22.

 The requirement to consider lesser sanctions prior to dismissal applies particularly to practice before the AGBCA. AGBCA Rule 25(b), unlike RUSCC 41(b) or Fed.R.Civ.P. 41(b), emphasizes that "the presiding officer may issue an Order of Dismissal for failure to prosecute *or take such other action deemed reasonable and proper under the circumstances.*" AGBCA· 25(b) (emphasis added). Federal courts, whose rules contain no specific reference to lesser sanctions, are required still to weigh the merits of less stringent sanctions. The Board, whose rules expressly refer to other "reasonable and proper" actions, must give some consideration to lesser sanctions.

In sum, federal courts, in exercising their discretion to dismiss, are required: first, to substantiate the requisite indicia of clear delay or insubordination, which indicia are generally bolstered by aggravating circumstances; and also to consider the availability and effectiveness of·lesser sanctions. To permit adequate review of exercises of discretion, federal trial courts are required to produce a record of the clear delay or insubordination (including, in most cases, the aggravating factors) and of the ineffectiveness of lesser sanctions. *Hornbuckle v. Arco Oil & Gas Co.*, 732 F.2d 1233, 1237 (5th Cir.1984).

The Federal Circuit administers a similarly careful rule for employment of the ultimate dismissal sanction. In a case characterized by the appellant's frequent and repeated defaults, the Federal Circuit ruled:

The appellant's entire course of conduct reflected a callous disregard for the rules and regulations of the court and fell far short of the obligations an attorney owes to a court before which he is conducting litigation.

*Kadin,* 782 F.2d at 177. Additionally, the record revealed "the flagrant character of the appellant's defaults." *Id.* The court noted that the appellant's disregard was sufficiently flagrant to override the application of lesser sanctions. Thus, the law of this circuit requires a record from the trial court establishing the flagrancy of the litigative misconduct which justifies the final sanction of dismissal. In order to ensure that the ultimate sanction was unavoidable, the trial court's record must also consider the suitability of applying lesser sanctions.

Federal trial courts are held to an exacting standard of care in exercising dismissal authority. This extreme sanction is reserved for cases with "a clear record of delay or contumacious conduct." *Donnelly v. Johns–Manville Sales Corp.,* 677 F.2d 339, 342 (3d Cir.1982); *Cheyenne–Arapaho Tribe of Indians v. United States,* 5 Cl.Ct. 79, 83–84 (1984). A contract appeals board, when exercising discretion to dismiss with prejudice, must abide by the same high standards of care. *Metadure,* 6 Cl.Ct. at 67. Applying this standard to the AGBCA actions, this court is unable to ascertain from the record that these minimal safeguards were employed prior to imposition of the sanction. Granting full deference to the record of the Board, this court cannot uphold the Board's action as within the bounds of proper discretion.

### The Board's Exercise of Discretion

■ The Board dismissed the plaintiff's case for failure to "fully comply with the Board's Proof of Costs Order." Opinion at 93,383. As noted above, the Board possesses inherent authority to impose sanctions to enforce its orders. *Fendler v. Westgate California Corp.,* 527 F.2d 1168, 1170 (9th Cir.1975); *Metadure,* 6 Cl.Ct. at 67. After more than ten years of litiga-

tion, however, dismissal for prejudice upon the first instance of failure to comply fully with an order, in the absence of extreme insubordination, is unduly harsh. This harshness is particularly evident when the plaintiff sought repeatedly to correct the incomplete compliance and was denied the opportunity.

As indicated by the above standards of review, the dismissal sanction generally is reserved for an entire course of conduct reflecting a callous disregard or a flagrant pattern of repeatedly ignoring the Board's order or orders. *See, e.g., Julien,* 864 F.2d at 1572; *Kadin,* 782 F.2d at 176–77. However, the Board dismissed with prejudice the first time that the plaintiff failed to satisfy completely an order of the Board. This court discerns no pattern of callous disregard or flagrant misbehavior on the part of the plaintiff in the Board's record.

Conceivably, a single instance of utter disregard could rise to that extreme level of egregiousness warranting dismissal. The record, however, does not contain any indicia of such blatant insubordination in the single failure of the plaintiff. Rather, the record indicates that the plaintiff did not utterly disregard the Board's pretrial order on proof of costs. Within the extended time permitted by the Board, the plaintiff filed a 41–page document purporting to comply with that order. Indeed, the plaintiff maintains that it has fulfilled the literal requirements of the order,[4] and the court's review reveals that any insufficiency was not total or glaring.

The order issued by the AGBCA placed the following obligation on the plaintiff:

> Within sixty (60) days of receipt, Appellant shall furnish to Government counsel and to the Board a statement in schedule form showing (a) all the items and figures which Appellant intends to prove from books of account or other records and (b) all the items and figures which Appellant intends to prove by means other than (a) above.

---

**4.** The plaintiff contends that it literally satisfied its obligations by disclosing what it "intend[ed] to prove" according to the terms of the order, even if that disclosure was incomplete and inad-

equate. The Board's order directed the plaintiff to show "all the items and figures" which it "intend[ed] to prove." Pretrial Order on Proof of Costs, January 25, 1985 at 1.

Pretrial Order on Proof of Costs, January 25, 1985, at 1. Under paragraph 2, the order then lists specifics (a) through (f) which the appellant is expected to supply "[w]ith respect to items and figures to be proven from books of account or other records." *Id.* at 55–56. Paragraph 3 of the order required the plaintiff to state the means, theories, and witnesses it will employ "[w]ith respect to items and figures to be proven pursuant to paragraph 1(b) above." *Id.* at 57.

In an effort to comply with this order, the plaintiff proffered a 41–page document, 37 pages of which comprise schedules, tables, and explanations of computations. The plaintiff did not, as requested by the order, segregate items intended to be proven with books and records from items intended to be established by other methods. Instead, figures from the contractor's records were mixed with various percentage multipliers and estimated expenses to arrive at a total amount of $410,061.96 [5]. In several respects, the plaintiff's submission is difficult to decipher and fragmentary.[6] Further, the plaintiff's submission makes only cursory explanations of the al-

---

5. The plaintiff's "Explanation of 'Computation of Amount Due Under the First and Fourth Causes of Action . . .'," a key explaining many of the 37 pages of tables in the plaintiff's proof of costs document, indicates at least six computations based on the contractor's "daily logs" or "records" or "financial records." Apparently, the plaintiff used some figures from its records in combination with other methods to arrive at the final cost figure.

6. Some of the deficiencies found by the Board in the plaintiff's May 6, 1985 submission include:

1. "Notwithstanding that Appellant contends its Proof of Costs combines the first and fourth causes of action, an analysis of the original claim letter, complaint and amended complaint leads the Board to conclude that this is not the case. . . . The hours worked . . . with respect to the first and fourth causes of action were the same as the hours listed [earlier] . . . with respect only to the fourth cause of action." Opinion at 93,376.

The plaintiff takes the position before this court that it intended to "consolidat[e] its first and fourth causes of actions . . . [and] only claim[s] its expenses relative to the work it performed on the Denton Creek segment of the contract." Pl. Brief filed Oct. 6, 1986, at 10. Further, the plaintiff includes a $9,850.00 figure for liquidated damages and a figure of $89,-229.15 for additional equipment time under the first claim.

The Board adopted the Government counsel's observation that this amounts to a "concession that it [the plaintiff] never really had a legitimate claim under its First Cause of Action." Opinion at 93,377.

2. The plaintiff included no amounts in its submission pertaining to the second and third causes of action, due to its understanding that "these claims have been, essentially, resolved by the parties." Proof of Costs, filed May 10, 1985 at 2.

The Board found settlement of these claims had been part of an earlier offer, but that the settlement offer had been rejected. Opinion at 93,377.

3. The Board raised questions about the equipment cost figures used by the plaintiff in computing its costs on the fourth cause of action. The Board adopted the opinion of the Department of Agriculture's Inspector General for Audit, which stated that the model employed by the plaintiff "is at best an estimate of equipment costs and is not indicative of actual equipment costs." *Id.* at 93,378.

The plaintiff responds in this court that its computations were based on a combination of computations done by Charles Duncan, the agency's Area Engineer, and figures for actual hours worked from its daily logs. Thus, plaintiff maintains, its proof was "by a combination of the methods permitted by the Board's order." Pl. Brief filed Oct. 6, 1986.

4. The Board further adopted the opinion of the Inspector General that the plaintiff "incorrectly uses a percentage developed from the 'cost of ownership' or each piece of equipment. . . . The inherent inequity of this approach is that it skews the allocation of operating expenses in the direction of the cost of ownership and not of actual hours used." Opinion at 93,379.

The plaintiff contends that "[t]he total operating expense was taken from its financial records and reflected the costs *paid* by the plaintiff for the complete job." Pl. Brief filed Oct. 6, 1986, at 12. Moreover the ownership rates employed by the plaintiff were "published by the Associated General Contractors of America, Inc.," for instances when information as to equipment ownership might be unavailable in a small contractor's records. *Id.* at 17.

5. With regard to payroll expenses, the Board found that "the use of actual or certified payrolls would have provided a more accurate way of associating specific labor costs with specific work items." Opinion at 93,379. Similarly, the Board found that the plaintiff's small tool cost was "derived by multiplying its total labor cost by 5%." *Id.*

The plaintiff contended that it multiplied the total labor paid by 125% to take into account payroll taxes and employee insurance. Pl. Brief filed Oct. 6, 1986, at 13. The plaintiff contended that its small tools calculation was valid under "trade practice." *Id.* at 19.

ternative methods and theories used to arrive at the total amount and mentions a single witness, appellant W.M. Dickson, who would testify about the costs.

The Board summarized its assessment of the plaintiff's submissions in the following terms: "In view of such vague and contradictory statements, the Board cannot conclude that Appellant has made a good faith effort to comply with the Order." Opinion at 93,380. The plaintiff, however, clearly made efforts to meet the requirements of the Board. Moreover, the record reveals that the plaintiff demonstrated no overt disrespect for the Board. To the contrary, the document was submitted within the extended time deadline granted by the Board and, despite ten years of on-again-off-again proceedings, contained no language indicating disregard for the Board or its processes.

Moreover, the plaintiff sought repeatedly, and was denied, the opportunity to correct deficiencies in its compliance. The Board's opinion recounts that Appellant stated it is 'ready, willing, able and desirous of prosecuting the appeal to resolution without further delay' and requested that the matter be set for hearing 'to resolve the remaining entitlement issues.'" Opinion at 93,381. The Opinion also indicates that, in still a further submission to the Board, the plaintiff offered to correct and recalculate figures in its proof of costs document. *Id.* In sum, the plaintiff evinced immediate good faith and willingness to overcome deficiencies. The plaintiff's repeated offers to improve its compliance with the Board's order are not consistent with the hardened recalcitrance or inability to comply with orders likely to characterize a case worthy of final dismissal. Again, in the context of a decade-long delay before some preliminary stages of the litigation were undertaken, the plaintiff's isolated instance of incomplete compliance

accompanied by repeated avowals of willingness to correct the deficiencies hardly rises to the level of egregiousness deserving of dismissal.

The Board failed to justify the sanction of dismissal by citing any aggravating factors that might help elevate this one instance of noncompliance into the kind of egregious conduct warranting the maximum sanction. The Board made no record that the plaintiff intentionally or repeatedly refused to comply with the order. And when the plaintiff learned that the Board was dissatisfied with its submission, it "offered to recalculate its small tools claim, demonstrate at the hearing that its use of a 125% factor in calculating claimed labor costs is reasonable and generally accepted in the industry, and amplify its method of supporting the amount claimed for rolling equipment expense." Opinion at 93,381.

Far from evincing willful disregard, the plaintiff was willing to recalculate or present additional evidence to prove its costs in full compliance with the Board's order. The Board dismissed this offer summarily: "But Appellant did not provide such recalculations, corrections and amplifications. Such proposed corrective actions, if corrective they would in fact be, would not be timely nor considered compliance in good faith with the Proof of Costs Order." *Id.* Although the plaintiff had partially complied, it received no opportunity to purge itself of the deficiencies in one filing. The plaintiff asked to correct, an indication of desire to comply fully. Nevertheless, the plaintiff was never afforded the opportunity to comply fully.

Instead, the Board, pursuant to the predismissal requirements of AGBCA rule 25(b), ordered the plaintiff to explain how its submission constituted proper compliance and why the appeal should not be dismissed. This show cause order was not an opportunity to correct or comply. As

---

6. The Board also found that the plaintiff apparently had the capacity to prove more of its costs with its books and records and even stated that it would use records in its proof of costs document. Nonetheless, the Board found that the plaintiff still employed other methods which were often less reliable. Opinion at 93,380.

The plaintiff maintains that it "intended to prove some of its costs and expense from its books of account and other records ... and intended to prove the remainder of its claim by other means." Pl. Brief filed Oct. 6, 1986, at 15. Moreover "nothing in the Board's Order ... prohibited such a methodology." *Id.* at 16.

ordered, the plaintiff merely defended the sufficiency of its submission and requested the opportunity to rectify its performance. Despite numerous indications of the plaintiff's willingness to comply, the Board never issued an order requiring full compliance. Rather than intentional disregard, the record before the Board reveals the plaintiff's willingness to comply with the Board's order. The aggravating factor of intentional disregard for the Board's order is not evident from the record.

The Board notes at one point that "where a party acts in willful disregard of an order which the Board considers reasonable and necessary ... a decision to dismiss is not considered an abuse of discretion." Opinion at 93,381, citing *Trans World Airlines, Inc. v. Hughes,* 332 F.2d 602 (2d Cir.1964). If this statement is, in fact, a finding by the Board that the plaintiff acted "in willful disregard" of the Board's order, it is not based on substantial evidence. When assessing whether potentially contumacious conduct was "intentional," a court should distinguish between a "pattern of neglect and indiscretion" and "stubborn and deliberate attempts to impede the prosecution of this case." *See Morris,* 730 F.2d at 253. Similarly, another case distinguished between "ineptitude or negligence" and "intentional or purposeful" misconduct. *Rogers,* 669 F.2d at 322–23. The record does not indicate that the plaintiff deliberately misled the Board or deliberately withheld information or deliberately failed to comply with the Board's orders.

At no point does the record indicate that the plaintiff, fully aware of the seriousness and consequences of its conduct, nonetheless willfully disobeyed the Board's order. To the contrary, the record indicates that the plaintiff attempted to comply with the order and then made repeated offers to correct or supplement its submission. In the absence of willfulness (or any other aggravating factors, as shall be shown), the Board's obligation to consider lesser sanctions (or allow the plaintiff to correct)

is a significant component of the proper exercise of discretion.

The Board's record also fails to indicate any prejudice to the defendant caused by the plaintiff's partial compliance. The Board states that the plaintiff's noncompliance harms the Government by "frustrat[ing] the purpose of the Order and leav[ing] the Government and the Board with no basis for expediting the remainder of this complex litigation." Opinion at 93,-382. Thus, as identified by the Board, the harm to the Government is a delay in completion of the litigation. As noted earlier, the plaintiff offered to cure this harm by making its accountant " 'available for furnishing of information regarding the books and records' and ... mak[ing] 'the underlying records ... available for the Government's examination.' " *Id.* at 93,383. The plaintiff was never permitted to supplement in a timely manner its submission. The Board's record does not substantiate any unique prejudice to the Government from the plaintiff's noncompliance. In sum, the record of one instance of incomplete compliance with an order of the Board is not bolstered by any aggravating factors. Particularly in the context of litigation stretching in its preliminary phase over a decade without any attribution to either party, this record does not justify imposition of the drastic sanction of dismissal.

The AGBCA's opinion does not indicate that the Board considered imposition of any sanction short of dismissal with prejudice. This requirement to consider less severe sanctions is reflected in AGBCA Rule 25(b) which permits an order of dismissal or such other action deemed reasonable and proper under the circumstances for failure to prosecute. The Board had at its disposal a variety of sanctions short of dismissal. The Board might have first employed explicit warnings with a final chance to comply. The Board might also have precluded the plaintiff from offering any evidence at trial other than that presented in the proof of costs statement[7]. Other potential reme-

---

7. At oral argument, plaintiff's counsel noted that this would have been an appropriate sanc- tion:

dies short of dismissal include discipline of the attorneys; assessment of litigation costs against attorneys or the plaintiff, *Julien*, 864 F.2d at 1572; or even dismissal without prejudice. The record does not suggest that any of these alternatives was even considered, let alone employed.[8]

At the time the Government moved the Board to dismiss under AGBCA Rule 25(b), the case had been pending for nearly ten years. The parties had, over five years before, participated in nine evidentiary hearings before the Board. After this extended delay and the expenditure of great effort by both parties, the Board should have at a minimum considered lesser sanctions before dismissing. The absence of any consideration of lesser sanctions is further indication that the Board abused its discretion.

Because the record indicates insufficient cause for dismissal, fails to identify aggravating circumstances that might make the noncompliance more egregious, and lacks any consideration of lesser sanctions, the Board's exercise of its inherent power to manage its caseload is invalid as an abuse of discretion. The Board's actions do not comply with the standards of review required by the Wunderlich Act.

### AGBCA Rule 25(b)

 Viewed as an exercise of the Board's authority to enforce its own rules, the Board's action suffers from other deficiencies. These deficiencies are not necessary to this court's ruling, but indicate further the oversights of the Board in meeting the higher requirements of its own

rules. The Government moved to dismiss pursuant to AGBCA Rule 25(b). Def. Brief filed May 8, 1987, at 10. This motion, when renewed, was granted[9].

AGBCA Rule 25(b) is unlike RUSCC 41(b) (which is substantially identical to Fed.R.Civ.P. 41(b)) in many respects. While RUSCC 41(b) is entitled "Involuntary Dismissal," AGBCA Rule 25(b) is entitled "Failure to Prosecute." While RUSCC 41(b) authorizes a court to dismiss for failure "to comply with ... any order of court," the Board's rule clarifies that failure to comply with an order merely sets in motion a procedure to ascertain if dismissal for "failure to prosecute" or other "reasonable and proper" sanctions are warranted.

Any party who fails to comply or otherwise indicates an intention not to continue the prosecution, according to the AGBCA rule, merely sets in motion procedures to ascertain the offending party's actual intentions. Dismissal, however, is warranted only "for failure to prosecute." In this case, however, the Board stressed that its dismissal order is based on failure "to *fully* comply with the Board's Proof of Costs Order." Opinion at 93,383 (emphasis added). The Board's Opinion makes no finding that the plaintiff failed to prosecute its case. In fact, the Appellant, as noted in the Board's Opinion, was "ready, willing, able, and desirous of prosecuting the appeal to resolution without further delay." *Id.* at 93,381. The Opinion also noted that the Appellant offered to make its accountant available to furnish additional information about the books and records and to make the actual records available for the

Mr. Goddard: If we wanted to we could have said, hey, we're not going to supply anything from books and records. And the Court says, then—the sanction would have been—okay, Mr. contractor, but you can't bring any of them into Court. And that's the sanction. That's the sanction.
The Court: Was that sanction ever issued as warning to you?
Mr. Goddard: No.
Transcript of Proceedings, No. 57–86C, Jan. 23, 1989, at 19.

8. At oral argument, defendant's counsel noted that the first, and only sanction, presented to the plaintiff for partial compliance was dismissal:

The Court: But the first sanction that you know of that was mentioned was dismissal?
Mr. McHale: That's correct.
Transcript of Proceedings, No. 57–86C, Jan. 23, 1989, at 48.

9. The Board noted that it was ruling on the Government's renewed motion to dismiss under AGBCA Rule 25(b): "Based on its contention that Appellant has failed to fully comply with the letter and intent of the Proof of Costs order, the Government has renewed its request that the appeal be dismissed with prejudice for failure to prosecute." Opinion at 93,376.

Government's examination. The Board rejected this offer as "not sufficient to overcome noncompliance with the Board's order." *Id.* at 93,383.

Thus, the Board's written record contains evidence that the plaintiff was ready and willing to prosecute the case. Yet the Board rejected the offers to prosecute on the basis of incomplete compliance with an order. AGBCA Rule 25(b) permits dismissals only for failure to prosecute; noncompliance sets the Rule 25(b) procedures in motion, but is not independent authority to dismiss with prejudice. Upon review of the Board's record, the terms of Rule 25(b) do not justify the Board's dismissal action.

The Board in its Opinion and the defendant in its briefs before this court cite several cases to support the contention that the AGBCA's actions were not arbitrary, capricious, or an abuse of discretion. These cases, however, serve rather to highlight the deficiencies in the Board's action. The Board, for instance, refers to *Metadure Corp. v. United States*, 6 Cl.Ct. 61. In *Metadure*, the plaintiff flatly refused to comply with three separate orders of the ASBCA. Moreover the plaintiff "squander[ed] the resources of the administrative tribunal" with voluminous submissions, contentious motions, and repeated requests for stay. *Id.* at 67. The ASBCA issued several warnings and orders to show cause in an effort to manage the case with sanctions short of dismissal. At length, when Metadure failed to comply with the latest recurring order, the Board, after "demonstrat[ing] patience and reasonableness," *id.*, dismissed the case with prejudice. Metadure did not deny its failure to comply with the order and did not show good cause for its failure. Unlike this case with its ten years of delay, one contested instance of incomplete compliance, and no consideration of alternative sanctions, the dismissal in *Metadure* was "required in order to protect the integrity of the tribunal and its orders." *Id.* at 68.

Similarly, the Board seeks authority from *Monitor Northwest Company*, GSBCA No. 7028, 85–2 BCA (CCH), ¶ 18,065 (1985) [1985 WL 16531]; and

*James R. Sloss*, AGBCA No. 434, 79–2 BCA (CCH) ¶ 13,893 (1979) [1979 WL 2142]. In *Monitor*, the appellant failed completely to comply with the Board's order. Moreover, the Board found that the plaintiff deliberately chose to disregard the order (due to financial difficulties). Unlike this case, the plaintiff's disobedience was found to be willful, one of the aggravating factors that may operate to exacerbate noncompliance. In *Sloss*, the plaintiff repeatedly failed to respond to the Board's orders. Unlike this case, the Board in *Sloss* found a "long history of delay, procrastination, and failure to respond to Board inquiries...." *Sloss*, ¶ 13,893, at 68,214. Accordingly, the Board determined that the plaintiff did not intend to continue to prosecute the appeal.

The Board also relied upon *Transworld Airlines, Inc. v. Hughes*, 332 F.2d at 602. In that case, the court found that Hughes "chose not to appear for this deposition—which action was taken deliberately and with full knowledge of the sanctions." *Id.* at 614. Thus, unlike the present case, Hughes acted in "willful and deliberate disregard" of the court's orders. *Id.*

After review of the cases cited by the defendant and the Board as authority to support this exercise of discretion, this court determines that, although the Board possesses the discretionary authority to impose the maximum sanction of dismissal with prejudice, the Board in this instance acted arbitrarily and abused its discretion. Accordingly, the Wunderlich Act forbids this court from according finality to the Board's dismissal action. 41 U.S.C. § 321.

Sufficiency of Administrative Remedy

■ The plaintiff contends that it was before the AGBCA for over ten years before the Board "first decided to require that plaintiff submit a Proof of Costs." Pl. Brief filed Oct. 6, 1986, 26. On this basis alone, the plaintiff asserts a failure of the administrative process and urges this court to assume jurisdiction of this case for a *de novo* trial. In *Baltimore Contractors Inc. v. United States*, 226 Ct.Cl. 394, 643 F.2d 729 (1981), this court's predecessor assumed *de novo* jurisdiction over a Wunder-

lich Act appeal when the prior proceedings before the Board were sufficiently biased to establish that the parties could not have obtained a fair hearing upon remand. In the case at bar, however, the plaintiff makes no showing of bias and asserts no reason for this court to doubt the fairness of the proceedings before the AGBCA. Mere delay, even as lengthy a delay as is evident in this case, is not an indication of bias. Accordingly, this court will remand to the Board for further evidentiary proceedings.

## CONCLUSION

For the reasons indicated above, the plaintiff's motion for summary judgment is granted in part and the defendant's similarly denied. The dismissal with prejudice was not justified by the record in this case. On the basis of the record, the Board acted arbitrarily in dismissing the plaintiff's case with prejudice. The plaintiff's request that this court assume *de novo* jurisdiction of this case is denied. The Clerk of the Court is directed to remand this case pursuant to RUSCC 60.1 to the AGBCA for further proceedings.

The Board shall have six months during which court proceedings shall be stayed. Defendant shall file a status report at intervals of ninety days beginning with the date of this order.

IT IS SO ORDERED.