GRIFFIN & DICKSON, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 57–86 C.

United States Claims Court.

June 28, 1990.

Ray Goddard and Elizabeth Weaver, New York City, for plaintiff.

Stephen McHale and Elaine J. Guth, with whom was Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C.

## OPINION

RADER, Judge.

In this last chapter in a long history of litigation, plaintiff, Griffin and Dickson, seeks approximately $96,775.64 in attorney fees and other expenses from the Government under the Equal Access to Justice Act (EAJA). 28 U.S.C. § 2412 (1988). Plaintiff incurred these costs before this court and the Agriculture Board of Contract Appeals (the AGBCA or Board).

This court grants plaintiff's EAJA application in the amount of $33,724.43. Defendant has not substantially justified the United States Department of Agriculture's (USDA) motions to dismiss before the Board.

## FACTS

In 1971, plaintiff entered into a contract with the United States Soil Conservation Service (SCS) to improve the channels of the Denton Creek in Texas. On April 14, 1974, four months after completion of the contract, plaintiff submitted a $371,345.53 claim to the contracting officer. The contracting officer denied the claim in November 1974. Plaintiff promptly appealed to the AGBCA.

The AGBCA litigation remained mired in pretrial proceedings for over a decade. Finally, on December 13, 1984, the Board requested USDA to submit a sample order requiring plaintiff either to produce a proof of costs statement or to permit an audit of financial records. USDA complied with the AGBCA request. The AGBCA adopted the order, with one notable exception. The Board required plaintiff to submit its proof of costs statement within two weeks instead of 60 days as suggested by USDA.

This court's previous opinion summarizes the ensuing events:

When the deadline had passed for the plaintiff to respond to the Board's order, the Government, on May 3, 1985, requested the Board, pursuant to Rule 25(b) of AGBCA rules, to dismiss the plaintiff's appeal for failure to prosecute. The Board, by a 7 May 1985 letter, served the Government's motion on the plaintiff and simultaneously afforded the plaintiff until May 15, 1985, to "fully comply with the Pretrial Order on Proof of Costs issued on January 25, 1985 or show good cause why this appeal should not be dismissed for failure to prosecute."

Meanwhile, on May 6, 1985, the plaintiff mailed its proof of costs document to the Board which was received on May 10, 1985. Thus, the plaintiff met the May 15 deadline extended by the Board's May 7 letter. The plaintiff's document consisted of 41 pages, including 37 pages of schedules with exhibits. The total amount shown in this proof of costs submission was $410,061.96.

On July 23, 1985, the Government, at the Board's request, responded to the plaintiff's Proof of Costs submission. Charging that the plaintiff's document was not "a sufficient substitute for the appellant's Books and records, and moreover, that the appellant failed to comply with the letter or intent of the Board's Order," the Government renewed its motion to dismiss the action. At that point, the Board, by order dated July 25, 1985, afforded the plaintiff ten days "to explain to the Board how its Proof of Costs is in full and proper compliance ... and why the Government's Motion to Dismiss should not be granted."

The plaintiff responded on August 7, 1985, with a Memorandum of Compliance.

. . . .

The Board, however, was not satisfied with the explanations contained in the plaintiff's brief. In a December 4, 1985

opinion, the AGBCA concluded that the plaintiff had failed to comply fully with the Board's pretrial order. Accordingly, the appeal was dismissed with prejudice. *Griffin & Dickson v. United States,* 16 Cl.Ct. 347, 350–51 (1989).

On appeal to the United States Claims Court, both parties filed motions for summary judgment on whether to uphold the AGBCA's dismissal. This court concluded in its February 24 opinion that the AGBCA "acted arbitrarily in dismissing plaintiff's case with prejudice." *Griffin & Dickson,* 16 Cl.Ct. at 359. This court remanded the case to the AGBCA.

Before the AGBCA scheduled remand proceedings, the parties negotiated a settlement agreement. Plaintiff discharged USDA of all obligations outside the settlement. The settlement allowed plaintiff to seek attorney fees incurred between May 3, 1985 and February 24, 1989.

On February 12, 1990, plaintiff filed with this court its EAJA application. Plaintiff initially requested $96,775.64.[1] Specifically, plaintiff requested $93,602.50 for attorney fees, $739.50 for clerical work, $2,417.64 for litigation expenses, and $16.00 for the work of a research assistant. Defendant contends both that plaintiff may not recover fees for AGBCA errors and that USDA's position was otherwise substantially justified. In the alternative, defendant seeks to reduce plaintiff's hourly rate and number of hours.

## DISCUSSION

### *Jurisdiction and EAJA*

Since 1796, the United States has followed the general rule that each party to a judicial proceeding must bear its own costs of litigation. *Arcambel v. Wiseman,* 3 Dall. 306 (1796). Federal courts lack authority to create exceptions to this rule. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1974). Congress, however, may create exceptions to the traditional American rule by statute. *Id.* Congress carved out such an exception in 1980 when it first enacted EAJA.[2]

Congress enacted EAJA to address the concern that individuals "may be deterred from seeking review of ... governmental action because of the expense involved in securing vindication of their rights." 94 Stat. 2325 (1980). The Senate Report explains:

> For many citizens, the costs of securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process.... When the cost of contesting a Govern-

---

1. Plaintiff has adjusted this amount to approximately $90,000.00. *See* Plaintiff's Motion for Leave to Amend Its Application, No. 57–86C, filed May 10, 1990; Motion to Supplement Plaintiff's Application, filed Feb. 16, 1990.

2. The Equal Access to Justice Act (EAJA) has a long and rocky legislative history. Senator DeConcini of Arizona first devised the measure in 1978 and introduced it in the 95th Congress as S. 1101. The Senate voted for the legislative initiative five different times before the House ultimately approved the measure in the final hours of the 96th Congress. The House, however, adopted the bill with the addition of a September 1984 sunset provision. The Senate accepted the House's sunset provision and President Carter signed EAJA into law.

   In anticipation of EAJA's expiration in 1984, the Senate began consideration of legislation that would extend EAJA's life indefinitely and clarify certain aspects of the statutory language. By August and September 1984, both houses issued reports on their respective bills. The House passed its version first (H.R. 5479), and sent it to the Senate for approval. After amend-

ments to the House version, the Senate passed H.R. 5479. After further amendment by the House, the House and Senate approved the bill on October 18, 1984, and October 29, 1984, respectively.

President Reagan vetoed H.R. 5479 on November 8, 1984. In his veto message, the President explained that the definition of "position of the United States," which included the underlying agency action as well as the Government's litigating position, was too broad. Such a definition could lead to protracted litigation and duplicative discovery.

To ameliorate the President's concerns, the 99th Congress ultimately enacted H.R. 2378, sponsored by Congressman Kastenmeier. The bill 'limited the determination of whether the Government's position was substantially justified to the agency and court record. This change eliminated the need for extended discovery and litigation. The President therefore signed H.R. 2378, U.S.Code Cong. & Admin. News 1985, 132 into law on August 5, 1985.

**4**

ment order, for example, exceeds the amount at stake, a party has no realistic choice and no effective remedy. In these cases, it is more practical to endure an injustice than to contest it.

S.REP. NO. 253, 96th Cong., 1st Sess. 5 (1979).

EAJA provides a reasonable attorney fees award to a prevailing party in a civil action unless the position of the United States "was substantially justified" or "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Congress authorized the Claims Court to award fees under this provision. 28 U.S.C. § 2412(d)(2)(F).

EAJA exposes the United States to liability and therefore invokes sovereign immunity doctrines. *Unification Church v. Immigration & Naturalization Service*, 762 F.2d 1077 (D.C.Cir.1985). The United States is immune from suit unless Congress specifically waives immunity. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957). Because EAJA waives sovereign immunity, this court must construe the statute narrowly and follow its limitations strictly. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983). Thus, this court cannot grant fees unless plaintiff's case clearly falls within the EAJA waiver.

Plaintiff's request for fees raises three questions. First, may the decision of the AGBCA, an administrative adjudicator, serve as the basis for an attorney fees award? Second, may the Claims Court award fees on the basis of the Government's position before the administrative adjudicator as well as this court? Third,

may the Claims Court award attorney fees incurred before the AGBCA?

**Decision of AGBCA as Basis of Award**

■ Plaintiff's fee application apparently seeks fees for the AGBCA's decision as well as for the Government's litigating position. The application states in pertinent part:

> [T]he United States Claims Court held that the Agriculture Board of Contract Appeal's decision, granting the Government's Motion to Dismiss ... was an abuse of discretion, arbitrary and capricious, and unsupported by substantial evidence.... The United States Department of Justice (DOJ) defended the agency's position ... before the United States Claims Court. This position of DOJ was *also* not substantially justified.

Plaintiff's Application for Attorneys' Fees And Other Expenses Under the Equal Access to Justice Act, filed Feb. 12, 1990 (EAJA Application) (emphasis added).[3] EAJA permits fee awards against the United States when acting in an adversary capacity only. Consequently, parties may not recover fees for errors and omissions made by administrative adjudicators.

The language of § 2412 links the United States' potential liability for fee awards to its adversarial role. Specifically, a party may recover attorney fees "incurred by that party in any civil action ... *brought by or against the United States....*" 28 U.S.C. § 2412(d)(1)(A) (emphasis added). Attorney fees are to be borne by the agency "over which the party prevails." 28 U.S.C. § 2412(d)(4). This language similarly suggests that EAJA awards only apply against enforcement or litigative arms of the Government. Parties do not prevail over impartial adjudicatory bodies, but over adversaries in a proceeding. Errors by

---

**3.** Plaintiff's reply brief lends support to the court's reading of the fee application. Plaintiff asserted: "[T]he position of the Government was not substantially justified at the following three stages during the litigation ... (2) the AGBCA's actions leading up to and dismissal with prejudice of Griffin and Dickson's appeal...." Plaintiff's Reply to Defendant's Response to Plaintiff's Application for an Award

under the Equal Access to Justice Act, filed April 25, 1990, at 7. Plaintiff further contends that the settlement agreement with the Government preserved the right to recover fees incurred "regarding the issue of complying with the proof of cost order, both at the Board and before the Claims Court...." Plaintiff's Reply, No. 57–86C, filed April 15, 1990, at 16.

administrative adjudicators do not create entitlement to attorney fees.

EAJA awards also depend upon the merits of the "position of the United States...." 28 U.S.C. § 2412(d)(1)(A). The term "position" means something different than a decision by an adjudicator. "Position" means "posture," "stand," or "belief." WEBSTER'S NEW WORLD DICTIONARY 1053 (3d ed. 1988); ROGET'S II 703 (1980). A decision is a "determination," "resolution," or "position" reached *after* consideration" of alternatives. ROGET'S II, at 235 (emphasis added). The term "position" connotes the type of advocacy present in an adversarial setting, while the term "decision" implies a detached choice or judgment between two positions. By using the word "position," Congress instructed courts to consider the adversarial posture of the United States rather than an adjudicator's resolution.

Legislative history underscores this meaning of EAJA. Due to intercircuit conflict on what Government action to consider in awarding fees, Congress clarified the definition of "position of the United States" in its 1985 amendments.[4] In pertinent part, EAJA now defines this phrase as "the action or failure to act by the agency upon which the civil action is based...." 28 U.S.C. § 2412(d)(2)(D). As the Senate Report explains, this definition clarified that "position of the United States" includes the Government's litigation position as well as the underlying Government action which made litigation necessary. The case law

which Congress used to explain its actions dealt only with agency enforcement or policy implementation, not administrative adjudication. S.REP. NO. 586, 98th Cong., 2d Sess. 8 (1984).

Like other boards of contract appeals, the AGBCA is an adjudicative body.[5] The Secretary of Agriculture (the Secretary) created the AGBCA under the Contract Disputes Act of 1978.[6] 7 C.F.R. § 24.1 (1990). The Secretary must staff the AGBCA with officers "who shall have no other inconsistent duties." 41 U.S.C. § 607(a)(1) (1982). These officers serve in the same manner as administrative law judges. 41 U.S.C. § 607(b). Further, Congress set the board members' salaries rather than delegating such responsibility to the agency that would be a party to the disputes before the Board. 41 U.S.C. § 607(b). The Secretary has buttressed the adjudicative nature of the AGBCA by promulgating rules of procedure that are similar to court rules. *See* 7 C.F.R. § 24.21 (1990).

As an adjudicative body, the AGBCA's actions cannot serve as the basis of an EAJA fee award. Consequently, this court cannot grant plaintiff's EAJA application on the basis of AGBCA's erroneous decision.

*Agency's Motion to Dismiss as Basis of Award*

To avoid a fee award under EAJA, the Government must substantially justify

---

4. Some courts had held that "position of the United States" includes only the posture taken by the Government in the litigation itself. *Spencer v. N.L.R.B.*, 712 F.2d 539 (D.C.Cir.1983); *Ellis v. United States*, 711 F.2d 1571 (Fed.Cir. 1983); *Tyler Business Services v. N.L.R.B.*, 695 F.2d 73 (4th Cir.1982). Other courts, however, had considered the Government's litigating position as well as the agency action which prompted the litigation in the first place. *Rawlings v. Heckler*, 725 F.2d 1192 (9th Cir.1984); *Natural Resources Defense Council v. United States Environ. Protection Agency*, 703 F.2d 700 (3rd Cir. 1983).

5. The Administrative Procedure Act does not include the business of the boards of contract appeals within the meaning of adjudication. 5 U.S.C. § 554 (1988). EAJA, however, specifical-

ly identifies these boards as adjudicative entities. 5 U.S.C. § 504(b)(1)(C).

6. While plaintiff filed its administrative case before enactment of the 1978 Contract Disputes Act, the adversarial proceedings at issue here largely occurred at the AGBCA after 1978. Further, pre–1978 officers were substantially similar to present AGBCA adjudicative officers. Specifically, under both schemes, the administrative officer issued findings of fact that were binding on this court and its predecessor, the Court of Claims. The administrative officer acted as a trial court, while this court acted as an appellate court. Thus, looking to the 1978 Contract Disputes Act to ascertain the nature of the AGBCA's role does not pose a problem in this case.

its position. The "position of the United States" includes "the action ... by the agency upon which the civil action is based...." 28 U.S.C. § 2412(d)(2)(D). Plaintiff contends that USDA was not substantially justified in moving to dismiss the AGBCA action. Consequently, plaintiff's application requests a fee award on the basis of USDA's motions to dismiss.

USDA's motions before the AGBCA caused the Claims Court litigation. When plaintiff missed a short AGBCA deadline by a few days, USDA requested the AGBCA to dismiss the action for failure to prosecute. The AGBCA required plaintiff to submit proof of costs by May 15, 1985. Plaintiff submitted the proof of costs on May 10, but USDA renewed its motion to dismiss. After giving plaintiff an opportunity to respond, the AGBCA granted USDA's motion to dismiss with prejudice. In its opinion dated February 24, 1989, this court reviewed and rejected USDA's position.

In sum, then, USDA's motions to dismiss have been a central component of adversary proceedings before both this court and the AGBCA. These motions are the underlying agency action which led to litigation before the Claims Court. As such, these USDA motions are proper subjects of this court's inquiry into whether "the position of the United States was substantially justified...." 28 U.S.C. § 2412(d)(1)(A).

Section 2412 states that this court may award "fees ... incurred ... in any civil action...." 28 U.S.C. § 2412(d)(1)(A). Civil action includes "an appeal ... from a decision of a contracting officer rendered pursuant to a disputes clause in a contract with the Government...." 28 U.S.C. § 2412(d)(2)(E) [7]. Thus, the court can award attorney fees incurred by plaintiff in its AGBCA appeal, which challenged an adverse decision of a contracting officer.

In sum, then, this court may award attorney fees incurred by plaintiff to contest USDA's motions to dismiss as well as to appeal the AGBCA's dismissal. In deciding whether to grant a fee award, this court will evaluate the justification behind the motions to dismiss and the Government's defense of the AGBCA dismissal. The decision of the AGBCA itself, however, may not serve as the basis of a fee award.

### Substantial Justification

As previously discussed, EAJA permits this court to award attorney fees unless "the position of the United States was substantially justified...." 28 U.S.C. § 2412(d)(1)(A). EAJA does not define the term "substantially justified." Consequently, in *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), the Supreme Court looked to the ordinary and plain meaning that these words convey:

> [A]s between the two commonly used connotations of the word "substantially," the one most naturally conveyed by the phrase before us here is not "justified to a high degree," but rather "justified in substance or in the main"—that is, justified to a degree that could satisfy a reasonable person.

*Pierce*, 487 U.S. at 565, 108 S.Ct. at 2550, *accord, Commissioner, Immigration & Naturalization Serv. v. Jean*, — U.S. —, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). The Court analogized this definition to a standard which requires a reasonable basis in law and fact.

The United States Court of Appeals for the Federal Circuit has interpreted the Supreme Court's reasonable basis formulation as a deferential threshold. The Federal Circuit generally has awarded attorney fees under EAJA only where the Government offered no plausible defense, explana-

---

**7.** The problem addressed by the Supreme Court in *Sullivan v. Hudson*, 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989), is not present in this case. The issue in *Sullivan* was "whether a Social Security claimant is entitled to an award of attorney's fees under the Equal Access to Justice Act for representation provided during administrative proceedings held pursuant to a district court order remanding the action...." *Sullivan*, 109 S.Ct. at 2251. EAJA did not explicitly address whether such a remand proceeding was part of the "civil action" under 28 U.S.C. § 2412. Here, however, EAJA explicitly defines appeals from contracting officer decisions as civil actions.

tion, or substantiation for its action. *See Beta Sys., Inc., v. United States,* 866 F.2d 1404, 1406 (Fed.Cir.1989); *Devine v. Sutermeister,* 733 F.2d 892 (Fed.Cir.1984). The novelty of a particular legal issue will not alleviate such paucity of support. *Devine,* 733 F.2d at 895.

■ The Government has the burden of proving that its position has a reasonable basis in law and fact. *Gavette v. Office of Personnel Management,* 808 F.2d 1456, 1467 (Fed.Cir.1986). In the case at bar, the Government has substantially justified its position before the Claims Court in defending the AGBCA decision. USDA's initial motions to dismiss, however, lack any reasonable basis in law and fact. Consequently, plaintiff may recover attorney fees under EAJA.

In light of the deference accorded agency adjudication, the Government's defense of the AGBCA decision before this court had a reasonable basis in law and fact. Plaintiff had to meet an extraordinarily difficult burden of proof to have this court set aside the AGBCA's decision. Specifically, this court must respect the finality of AGBCA decisions unless they are "fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or ... [are] not supported by substantial evidence." 41 U.S.C. § 321 (1982).

The Government properly observed that this court would not reverse the AGBCA's decision unless arbitrary, capricious, not supported by substantial evidence, or rendered in bad faith. *Riverside Research Inst. v. United States,* 860 F.2d 420, 422 (Fed.Cir.1988); *American Elec. Laboratories, Inc. v. United States,* 774 F.2d 1110, 1112 (Fed.Cir.1985). The fact that this court ultimately reversed the AGBCA's decision as arbitrary and capricious does not make the Government's position any less justified. *Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States,* 837 F.2d 465, 467 (Fed.Cir.), *cert. denied,* 488 U.S. 819, 109 S.Ct. 60, 102

L.Ed.2d 38 (1988), quoting *Broad Ave. Laundry & Tailoring v. United States,* 693 F.2d 1387, 1391 (Fed.Cir.1982); *see also, Doe v. United States,* 16 Cl.Ct. 412, 419 (1989).[8]

USDA's motions to dismiss, however, lack a reasonable basis in law and fact. In the first place, the single case cited by USDA in its motion—*Hey v. United States,* 5 Cl.Ct. 482 (1984)—clearly did not support this dismissal. In *Hey,* plaintiff never made any attempt to comply with the Claims Court's pretrial submissions order.

Unlike *Hey,* plaintiff in this case did make a good faith effort to comply with the AGBCA's proof of costs order. After USDA filed a motion to dismiss for failure to prosecute, the AGBCA gave plaintiff until May 15, 1985, to submit proof of costs. Plaintiff mailed proof of costs documentation on May 6, 1988, one day before the AGBCA even served the Government's motion and written notice of the May 15 deadline. Plaintiff proffered a 41–page document containing schedules, tables, and explanations of computations. In the face of USDA's renewed motion to dismiss, plaintiff repeatedly sought, but was denied, an opportunity to correct any deficiencies contained in its submission. Plaintiff offered to correct and recalculate cost figures. Plaintiff stood at all times "ready, willing, able and desirous of prosecuting the appeal to resolution without further delay...." *Griffin & Dickson,* 16 Cl.Ct. at 355.

The renewed motion to dismiss was even more irrational than the first. The AGBCA's order required plaintiff to show its damage through actual costs (books and records) or other means. Plaintiff represented to this court that it lacked books or records and intended to prove costs through testimony. Consequently, moving to dismiss because of the inadequacy of financial records submissions is not reasonable. Plaintiff did not fail to comply with

---

8. *Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States,* 837 F.2d 465 (Fed.Cir. 1988) and *Broad Ave. Laundry & Tailoring v. United States,* 693 F.2d 1387 (Fed.Cir.1982), predate *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct.

2541, 101 L.Ed.2d 490 (1988), where the Supreme Court interpreted "position of the United States" different than the Federal Circuit. *Pierce,* however, did not overrule other aspects of these two opinions.

the Board's order. It supplied what it could and intended to supplement with live testimony, which the Board's order allowed.

Further, USDA's reliance on *Hey* was erroneous in view of the relevance of the enlargement of time provisions of RUSCC 6. In *Hey*, plaintiff did not file a motion for enlargement of time, which is necessary where a party before the Claims Court seeks to file documents out of time. RUSCC 6(b).

While plaintiff in *Hey* had an obligation under the rules to move for enlargement of time, AGBCA rules do not contain any such requirement. In fact, AGBCA rules give no guidance on the method or appropriate grounds for rescheduling matters, except in the case of the final hearing. This court cannot accept USDA's argument that a harsh sanction such as dismissal is appropriate for failing to move for enlargement of time when AGBCA rules do not alert parties to the necessity of such a motion.

USDA's motions to dismiss also lacked substantial justification under the AGBCA rules. AGBCA rules favor efforts to compel submission of the desired discovery material over motions to dismiss the action. For example, Rule 25(b) authorizes the AGBCA to dismiss a case for failure to prosecute, but also encourages the Board "to take such other action deemed reasonable and proper under the circumstances." 7 C.F.R. § 24.21 (1990). Rule 13 gives the AGBCA power to order sanctions "necessary to the just and expeditious conduct of the appeal" where a party "fails or refuses to obey an order...." *Id.* Similarly, while Rule 12 encourages parties to engage in voluntary discovery, USDA may petition the Board to seek judicial exercise of the subpoena power. AGBCA Rule 14, 7 C.F.R. § 24.21.

These alternatives to dismissal are particularly relevant in view of the facts surrounding AGBCA's proof of costs order. Plaintiff operated under the assumption that the AGBCA would address issues of liability only. The proof of costs order, which dealt with damages issues, injected an element of surprise in the 10-year-old liability proceeding. USDA more appropriately should have sought sanctions rather than dismissal. Such sanctions could have included orders issuing explicit warnings, imposing financial penalties, or limiting presentation of evidence to the proof of costs statement.

Finally, USDA's motions to dismiss patently ignored prevailing case authority on the appropriateness of dismissal for failure to prosecute. Specifically, the AGBCA could not properly dismiss for failure to prosecute unless plaintiff exhibited a callous disregard or flagrant pattern of repeatedly ignoring the Board's orders. *Hornbuckle v. Arco Oil & Gas Co.*, 732 F.2d 1233, 1237 (5th Cir.1984); *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339, 342 (3d Cir.1982); *Cheyenne-Arapaho Tribe of Indians v. United States*, 5 Cl.Ct. 79, 83-84 (1984). Contract boards of appeal must abide by this high standard. *Metadure Corp. v. United States*, 6 Cl.Ct. 61 (1984).

In its submissions to the AGBCA, USDA presented no evidence of either bad faith or a pattern of dilatory conduct. USDA merely labelled plaintiff's delay egregious because proceedings before the AGBCA had lasted for ten years. Yet, as this court stated in its previous opinion, the length of proceedings before the AGBCA reflected a lack of diligence on the part of both parties. Further, as previously discussed, at least some share of the delay is due to the unanticipated attention to the damages issue.

In sum, then, USDA did not provide sufficient support for its motion to dismiss. It ignored the procedural course charted by the AGBCA rules and ignored case authority on failure to prosecute. The Government cannot justify its underlying agency action substantially, and plaintiff therefore may recover attorney fees under EAJA.

### Amount Of Attorney Fees Recoverable

Every attorney fee application necessarily raises two inquiries. First, what hourly rate should the court use to calculate late fees? Second, how many hours are recoverable?

*Appropriate Hourly Rate*

EAJA presumes that $75.00 is the maximum compensable hourly rate absent special circumstances. Section 2412 states:

> [A]ttorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor ... justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A). Courts have interpreted narrowly the "special factor" language of EAJA. For example, the Supreme Court stated:

> We think it [special factor] refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation.

*Pierce,* 487 U.S. at 572, 108 S.Ct. at 2554. Special factors are not susceptible to broad and general application. *Id.* at 573, 108 S.Ct. at 2554. Consequently, special factors do not include the novelty and difficulty of issues, the undesirability of a case, the work and ability of counsel, or the ultimate disposition. *Id.*

To justify raising the $75.00 EAJA ceiling on attorney fees, the prevailing attorney must possess some "distinctive knowledge or specialized skill needful for the litigation in question," such as special patent law, foreign law, or foreign language knowledge. *Id.* at 572, 108 S.Ct. at 2554. This enumeration suggests that an attorney may not receive enhanced fees simply for specialized knowledge in general American law, but must show peculiar expertise beyond American law. An applicant might, for instance, possess engineering skills for a patent case or language skills for an international case. The fee applicant has the burden of proving such special factors. *Kunz Constr. Co. v. United States,* 16 Cl.Ct. 431, 438 (1989), aff'd 899 F.2d 1227 (Fed.Cir.1990); *see also, Continental Web Press, Inc. v. N.L.R.B.,* 767 F.2d 321, 323–24 (7th Cir.1985).

■ This case simply did not call for any special skills. Although plaintiff's counsel exhibited an extraordinary general knowledge of contract law, this expertise is not grounds for an enhanced hourly rate.

An attorney may recover above the $75.00 ceiling, however, for cost of living increases. The cost of living adjustments (COLA) are not construed as narrowly as special factors. If a fee applicant can demonstrate that his practice area has experienced cost of living increases, then the court may adjust the ceiling upward. *See, e.g., Wilkett v. Interstate Commerce Comm'n,* 844 F.2d 867, 875 (D.C.Cir.1988); *Doe,* 16 Cl.Ct. at 421; *Kunz,* 16 Cl.Ct. at 438–39; *Keyava Constr. Co. v. United States,* 15 Cl.Ct. 135, 139–40 (1988).

Courts have disagreed over the time period to consider in calculating COLA-based fee increases. EAJA first became effective on October 1, 1981 and expired in 1984. Congress then reenacted EAJA indefinitely on August 5, 1985, retaining the original $75.00 ceiling. Most circuits have interpreted the 1985 version of EAJA as requiring the effective date of the original EAJA (October 1, 1981) as the base year. *See, e.g., Garcia v. Schweiker,* 829 F.2d 396, 401–02 (3rd Cir.1987); *Louisiana ex rel. Guste v. Lee,* 853 F.2d 1219, 1226 (5th Cir.1988); *Jean v. Nelson,* 863 F.2d 759, 773–74 (11th Cir.1988), *aff'd, Commissioner, Immigration & Naturalization Serv. v. Jean,* —— U.S. ——, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990); *Trichilo v. Secretary of Health and Human Services,* 823 F.2d 702, 705–07 (2d Cir.1987); *Hirschey v. Federal Energy Regulatory Comm'n,* 777 F.2d 1, 5 (D.C.Cir.1985); *but see, Chipman v. Secretary of Health & Human Servs.,* 781 F.2d 545, 547 (6th Cir.1986).

The Claims Court has adopted this majority approach. *Keyava,* 15 Cl.Ct. at 139–40. In reenacting EAJA, Congress provided that § 2412(d) "shall be effective on or after the date of the enactment of this Act as if [it] had not been repealed" by the sunset provisions in the original EAJA. From this, the Claims Court properly reasoned that 1981 should be the starting point for cost of living computations, even in cases brought under the 1985 version of EAJA. *Keyava,* 15 Cl.Ct. at 140. The COLA should reflect the cost of living in-

crease that occurred between 1981 and the dates the attorney rendered compensable legal services. *See, e.g., Cox Constr. Co. v. United States,* 17 Cl.Ct. 29, 37 (1989); *Kunz,* 16 Cl.Ct. at 439; *Keyava,* 15 Cl.Ct. at 140.[9] The court can adjust fees based either on national or local Consumer Price Index (CPI) figures. *See Cox,* 17 Cl.Ct. at 37.

■ Plaintiff has argued that increases in the cost of living warrant a rate above the $75.00 per hour ceiling. Plaintiff properly requests and has calculated the upward adjustment in accordance with the formula set forth in *Cox,* 17 Cl.Ct. at 29.[10] Under this formula, plaintiff may receive hourly rates of $90.88 for 1986, $95.47 for 1987, and $105.63 for 1989 in connection with work performed before the Claims Court. Plaintiff may receive hourly rates of $82.50 for May through August 1985, in connection with work performed by Robert Schleier before the AGBCA.[11] To reach a fee award, the court will multiply these adjusted rates by the number of compensable hours.

Number of Compensable Hours

The fee applicant must provide specific evidence supporting the number of hours

spent and the hourly rates claimed. Section 2412(d)(1)(B) states:

A party seeking an award of fees and other expenses shall ... submit to the court an application for fees and other expenses which shows ... the amount sought, including an itemized statement from an attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses are computed.

*See also, Hensley v. Eckerhart,* 461 U.S. 424, 433, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983); *Owen v. United States,* 861 F.2d 1273, 1275 (Fed.Cir.1988); *Naporano Iron & Metal v. United States,* 825 F.2d 403, 404 (Fed.Cir.1987); *Lolley v. United States,* 18 Cl.Ct. 498, 507 (1989).

The fee applicant should keep adequate records to allow the reviewing court to identify distinct claims. *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941.[12] If the EAJA applicant fails to keep adequate and understandable records, the court has no duty to reconstruct them. *Naporano,* 825 F.2d at 405.[13]

The court need not accept the fee applicant's documentation. The court has dis-

9. This court denies plaintiff's application insofar as it requests that the cost of living increase be computed up to the date on which the court awards fees (1990) instead of only up to the date that counsel actually rendered services. Plaintiff's request for an adjustment of fees based on the cost of living after services were rendered would constitute compensation for delay. Requests of compensation for delay, no matter how labelled, ostensibly are claims for interest on an underlying award. Yet, EAJA does not provide an award with interest. As a limited waiver of sovereign immunity, this court must construe EAJA narrowly and therefore must deny what is basically a request for interest not provided by statute.

10. In *Cox Constr. Co. v. United States,* 17 Cl.Ct. 29 (1989), the Claims Court computed the upward adjustment by dividing the average Consumer Price Index (CPI) for the years services were rendered by the baseline CPI for October 1981, the date Congress enacted the EAJA. The court then multiplied this quotient by the $75.00 ceiling to reach the adjusted rate. The court used CPI figures for the region within which the attorney located his practice.

11. The adjusted rates are different for the Claims Court work and the Agricultural Board of Contract Appeals (AGBCA) work because different attorneys of record from different regions represented plaintiff at these stages. New York firms represented plaintiff before the Claims Court. A Texas attorney represented plaintiff before the AGBCA, and plaintiff has supplied at the court's request Dallas–Fort Worth average CPI figures to calculate his upward adjustment. Plaintiff's Calculation of Attorneys' Fees Incurred in the Dallas, Texas Area, filed June 25, 1990.

12. "Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Hensley v. Eckerhart,* 461 U.S. 424, 437 n. 12, 103 S.Ct. 1933, 1941 n. 12, 76 L.Ed.2d 40 (1983).

13. Plaintiff's timesheet submissions bordered on inadequacy. Cryptic handwriting and failure to organize timesheets in an understandable pattern cost this court time better spent resolving cases on the merits.

cretion to determine the amount of an award. *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941; *Northcross v. Board of Educ. of Memphis City Schools,* 611 F.2d 624, 636 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980). If the court rejects some or all of the fee applicant's documentation, however, it must provide a concise and clear explanation. *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941; *Crumbaker v. Merit Sys. Protection Bd.,* 781 F.2d 191, 195 (Fed.Cir.1986), citing *Northcross,* 611 F.2d at 636–37; *Heiar v. Crawford County,* 746 F.2d 1190, 1204 (7th Cir.1984), *cert. denied,* 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985). This explanation facilitates appellate review of the trial court's fee award decision. *Crumbaker,* 781 F.2d at 195; *Northcross,* 611 F.2d at 637.

Courts have acknowledged three general grounds for rejecting the number of compensable hours in an EAJA application. First, if an applicant provides inadequate documentation, the court may reduce the requested award. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939; *see also, Raton Gas Transmission Co. v. Federal Regulatory Energy Comm'n,* 891 F.2d 323, 330–31 (D.C.Cir.1989).

Second, the court may exclude hours not "reasonably expended." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939. The United States Court of Appeals for the First Circuit, for example, "look[ed] to the documents submitted to the courts and to the hours claimed to determine whether a rea-sonable number of hours was spent, given the nature of the task at hand and the results achieved." *Grendel's Den,* 749 F.2d 945, 952 (1st Cir.1984).

Third, the court may strike hours for duplicative work, padding, or frivolous claims. *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939. Further, the court need not award an attorney's $75.00 per hour fee for services reasonably performable by a lay assistant. *Northcross,* 611 F.2d at 637, *see also, Jean v. Nelson,* 863 F.2d 759, 778 (11th Cir.1988).

Plaintiff has requested attorney fees for 796.15 hours of work. According to plaintiff's application, attorneys spent 201.75 hours before the AGBCA on the proof of costs issue, 484.4 hours before the Claims Court,[14] and 110 hours to prepare the EAJA application. Plaintiff's application also requests fees for an additional 66 hours spent by Robert Schleier, but does not identify the nature of work.[15]

■ Plaintiff may not recover fees, however, for 199.45 of the 484.4 hours spent before the Claims Court. As for 88.65 hours, plaintiff lacked sufficient documentation,[16] requested fees for services that non-legal personnel could have undertaken,[17] improperly included unrelated matters,[18] and committed computational errors.[19]

Plaintiff's application further states an excessive quantum of hours for preparation at the Claims Court level. This court

---

**14.** Of this amount, plaintiff spent approximately 166 hours to prepare the summary judgment motion, and 84.8 hours to conduct research. The rest appears to be interoffice conferences, meetings with the client, and telephone calls.

**15.** Without any documentation, the court cannot grant fees for this work.

**16.** By "insufficient documentation," this court means that plaintiff failed to give a general description of the work performed. Plaintiff's billing records for June 4, 1986, July 10, 1986, September 16, 1986, and October 28, 1986 contain such insufficient documentation. EAJA Application, at Ex. D.

**17.** Specifically, plaintiff has requested attorney fees for research and documents assembly which paralegals, secretaries, or law clerks could have completed. *See* entries for March 14, 1986, August 21, 1986, September 9, 1986, September 16, 1986, and May 7, 1987. EAJA Application, at Ex. D.

**18.** By "unrelated matters," this court means collection issues strictly of interest to plaintiff and its legal representative. Plaintiff improperly requested fees for such matters handled in 1986 on April 25, July 8, July 16, August 4, September 2, 8, 10, 15, 19, 25, 26, 29 and 30, in 1987, on March 17, 20, 25, and 27, July 21 and 22, and September 23, and December 13, 1988. EAJA Application, at Ex. D.

**19.** For example, plaintiff's application contains a computational error for the invoice dated November 17, 1986.

denies as excessive and duplicative another 110.8 hours of the 484.4 hours spent on Claims Court litigation. In the first place, plaintiff's counsel has substantial Claims Court and Government litigation experience. Given this amount of experience, counsel should have spent less time preparing for this litigation.

The issue before this court was a routine summary judgment issue involving standard deferential review of agency action. The case required no peculiar research or legal development. The parties did not conduct discovery, appeared for one oral argument only, and resolved the case at the summary judgment stage on the administrative record alone. Thus, the limited nature of the Claims Court litigation makes these 110.8 hours unreasonable.

Plaintiff volunteered at oral argument that the number of attorney hours spent by Department of Justice attorneys is relevant to reviewing the reasonableness of its own hours.[20] Department of Justice attorneys spent only 126.75 on the case before this court. Plaintiff contends that it spent almost four times that amount. After this court's reductions, plaintiff still receives compensation for more than twice as many hours spent by Department of Justice attorneys.

Plaintiff also may not recover fees for 149.25 hours related to the AGBCA proceeding. The court must reduce the request by 121.5 hours for computational error,[21] by 12.5 hours for lack of documentation,[22] and by .25 hours for requesting fees for services that non-legal personnel could perform.[23] Further, the court cannot

award fees for 15 hours of time involving preparation of the proof of costs, which plaintiff waived under its settlement agreement.[24]

Plaintiff also may not recover attorney fees for work performed in connection with the preparation of the EAJA application. While parties ordinarily may recover such fees,[25] plaintiff waived this right under a settlement agreement with the Government. In settling its claim with the Government before the AGBCA, plaintiff limited its right to collect attorney fees. Specifically, the settlement constituted a full discharge of the Government's obligations except for attorney fees incurred before the AGBCA and Claims Court to litigate the proof of costs issue. The settlement agreement states:

> The parties agree that payment of this sum will be a full discharge to the Government of all claims and demands by the Appellant arising from Contract No. AG–48SCS–00370, including all claims for interest, costs and attorney fees, except that the Appellant reserves the right to submit an application, pursuant to the Equal Access to Justice Act, to the appropriate forum for attorney fees and costs Appellant claims to have incurred in connection with the issue of its compliance with the Board's Pretrial Order on Proof of Costs as stated in Paragraph 4 of the Settlement Agreement and to exclude any fees and costs Appellant otherwise incurred in prosecuting the merits of its claims.

Appellant's reservation encompasses the time period from May 3, 1985 when the Government filed its Motion to Dis-

---

**20.** Plaintiff's comments in this regard prompted the court to ask the Justice Department to report the amount of time it spent on matters before this court. Defendant promptly supplied the court with this information.

**21.** Plaintiff acknowledged this error at oral argument.

**22.** *See* line items and descriptions for work performed on July 31, 1985 and August 3, 1985. EAJA Application, at Ex. D.

**23.** Specifically, plaintiff requested attorney fees for ostensibly clerical work performed on July 30, 1985. EAJA Application, at Ex. D.

**24.** *See* description of time for May 5 and 6, 1985. EAJA Application, at Ex. D.

**25.** Equal Access to Justice Act (EAJA) attorney fees generally include expenses incurred in making the EAJA fee application. *Commissioner, Immigration & Naturalization Serv. v. Jean,* — U.S. —, — — —, 110 S.Ct. 2316, 2320–21, 110 L.Ed.2d 134 (1990); *Schuenemeyer v. United States,* 776 F.2d 329, 333 (Fed.Cir.1985); *Devine v. Sutermeister,* 733 F.2d 892, 899 (Fed. Cir.1984); *Kunz Constr. Co. v. United States,* 16 Cl. Ct. 431, 438 (1989).

miss for Failure to Prosecute, and thereafter when Appellant opposed such Motion to Dismiss and subsequently prosecuted its appeal of the Board's dismissal to the United States Claims Court under the Wunderlich Act, 41 U.S.C. 321, until February 24, 1989, when the Claims Court issued its decision in case No. 57–86C finding that the Board acted arbitrarily and remanding the appeal to the Board.

EAJA Application, Ex. B, at ¶¶ 3, 4. Plaintiff released the Government of *all* liability *except* for fees "incurred in connection with the issue of its compliance with the Board's [AGBCA] pretrial order...." EAJA Application, Ex. B, at ¶ 3. Fees incurred in preparing the EAJA application do not fall within the language of this narrowly defined exception. Further,

while plaintiff limited its right to recover fees to the period between May 3, 1985 and February 24, 1989, plaintiff seeks fees for work completed in March and April 1989, as well as in 1990. This court therefore must disregard the 110 hours of attorney fees requested by plaintiff beyond the terms of the settlement.

Computing the Attorney Fee Award

Plaintiff may recover attorney fees for 337.45 hours of work. The court must multiply this number by the appropriate hourly rate to reach a fee award in this case.

The following table calculates plaintiff's fee award, taking into account enhancement of the rate and reduction in the number of compensable hours:

| Activity | No. of Hours[26] | Rate | Line Total |
|---|---|---|---|
| AGBCA work May '85 | 14.25 | $ 82.50 | $ 1,175.62 |
| AGBCA work July '85 | 4.50 | $ 82.50 | $ 371.25 |
| AGBCA work Aug. '85 | 33.75 | $ 82.50 | $ 2,784.37 |
| USCC '86 | 248.20 | $ 90.85 | $22,548.97 |
| USCC '87 | 20.75 | $ 95.47 | $ 1,981.00 |
| USCC '89 | 16.00 | $105.63 | $ 1,690.08 |
| TOTALS | 337.45 | — | $30,551.29 |

Thus, plaintiff may recover $30,764.15 in attorney fees under EAJA.

*Award of Expenses, Fees, and Costs*

Provided that the position of the United States is not substantially justified, a court "*shall* award to a prevailing party ... fees and other expenses, in addition to any costs awarded pursuant to subsection (a)...." 28 U.S.C. § 2412(d)(1)(A) (emphasis added). Subsection (a) states that "a judgment for costs ... *may* be awarded to the prevailing party...." 28 U.S.C. § 2412(a) (emphasis added).

By using the term "shall," EAJA requires that a court award "fees and other expenses" to a prevailing party if the

Government has not offered substantial justification for its position. Given the use of the word "may," however, a request for costs is within the sound discretion of the trial court. Consequently, the extent of this court's discretion depends on whether the recovery requested by plaintiff is for costs or for fees and other expenses.

Under EAJA, fees and other expenses include:

the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case....

---

**26.** The hours excluded as excessive in connection with work before the Claims Court were subtracted equally among the three years at

issue. The sketchy nature of plaintiff's submissions make this the fairest and most accurate method of calculation.

28 U.S.C. § 2412(d)(2)(A). This list is not all-inclusive, but illustrative of the types of items recoverable as fees and costs. The common feature running through this list is that each item generates substantive material for the case. Costs, on the other hand, usually include telephone, clerical, mailing, copying, and other administrative costs.

Under the "other fees and expenses" heading of its EAJA application, plaintiff has requested $739.50 for clerical work, $2,417.64 for litigation costs (telephone, mailing, messenger services, etc.), and $16.00 for research assistance. The clerical and litigation expenses are more properly characterized as costs, which are a matter of the court's discretion. The research assistance, however, properly falls within the nondiscretionary category of expenses because such an item involves substantive aspects of the case.

This court grants plaintiff's request for research assistance expenses. Further, the court grants the clerical and litigation costs requested by plaintiff. Defendant has not argued that these costs are unreasonable or insufficiently documented. Thus, plaintiff recovers an additional $3,173.14, resulting in a total EAJA award of $33,724.43.

### Payment of Plaintiff's Award

█ Under EAJA, awards for attorney fees and other expenses "shall be paid by any agency over which the party prevails from funds made available to the agency by appropriation or otherwise." 28 U.S.C. § 2412(d)(4). In this case, plaintiff's EAJA application requests fees from both the Department of Agriculture and the Department of Justice.

Plaintiff prevailed over USDA. Plaintiff's initial claim was against USDA's Soil Conservation Service. Plaintiff appeared before the AGBCA, an entity specifically designed for claims against USDA. The settlement agreement in this case is between plaintiff and USDA. The Department of Justice was not a party to plaintiff's underlying dispute. Thus, USDA must pay plaintiff's EAJA award.

### CONCLUSION

Plaintiff may recover reasonable attorney fees incurred before the AGBCA and the Claims Court in connection with the AGBCA's proof of costs order and USDA's related motions to dismiss. The Government has not substantially justified its position. Specifically, the motion to dismiss plaintiff's AGBCA action lacked a reasonable basis in law and fact.

Plaintiff, however, may not recover $96,775.64. After reviewing plaintiff's billing records and calculating an appropriate rate, this court awards $30,551.29 in attorney fees. Further, the court awards plaintiff all requested costs and other expenses, resulting in a total EAJA award of $33,724.43.

The Clerk is directed to enter judgment accordingly. No other costs.