# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| Environmental Safety Consultants, Inc. ) | ASBCA No. 58343 |
| ) | |
| Under Contract No. N62470-95-C-2399 ) | |

APPEARANCE FOR THE APPELLANT:      Mr. Peter C. Nwogu
President

APPEARANCES FOR THE GOVERNMENT:      Ronald J. Borro, Esq.
Navy Chief Trial Attorney
Ellen M. Evans, Esq.
Senior Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE FREEMAN ON THE GOVERNMENT'S RENEWED MOTION TO DISMISS

On 10 July 2014, the government submitted this renewed motion to dismiss the appeal on the grounds that (i) Environmental Safety Consultants, Inc., (ESCI) has not complied with the Board's 20 May 2014 discovery order, and (ii) ESCI's failure to retain cost records as required by the contract has prejudiced the government's ability to respond to ESCI's allegations in the appeal. ESCI opposes the motion stating that (i) it provided its books and records for government inspection as required by FAR and (ii) the fact that its books and records did not contain evidence of actual incurred costs was no basis for dismissing the appeal or applying sanctions (opp'n at 9). On review of ESCI's responses to the discovery order, we find substantial non-compliances which warrant prohibiting ESCI from producing at hearing any documentary evidence or witness that should have been disclosed in the discovery ordered by the Board. Accordingly, that sanction is ordered and the motion to dismiss is denied.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. The captioned contract, awarded on 13 November 1995, (hereinafter "Contract 2399") was terminated for default on 12 June 1998. On 28 September 2011, the Board sustained an appeal from the default termination. Pursuant to the terms of the contract, that decision converted the default termination to a termination for the convenience of the government. *See Environmental Safety Consultants, Inc.*, ASBCA No. 51722, 11-2 BCA ¶ 34,848. Familiarity with that decision is presumed.

2. On or about 5 July 2012, ESCI's submitted to the contracting officer a total cost basis termination settlement proposal with a net payment request of $1,183,366.59 for the termination of Contract 2399. On 14 September 2012, ESCI converted the proposal to a claim under the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109. The contracting officer refused to either negotiate a settlement agreement or issue a final decision on the claim. She alleged that the claim was "conceived in fraud and is permeated by fraud" and that the contracting officer "lacks authority to decide it or settle it." *See Environmental Safety Consultants, Inc.*, ASBCA No. 58343, 14-1 BCA ¶ 35,681 at 174,666. On 29 September 2012, ESCI appealed the deemed denial of its claim, and that appeal (ASBCA No. 58343) is presently before us.

3. The Federal Acquisition Regulation (FAR) 52.249-2, TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE)–ALTERNATE 1 (APR 1984) clause (hereinafter "the Termination clause"), of the captioned contract states in pertinent part:

> (f) If the Contractor and Contracting Officer fail to agree on the whole amount to be paid the Contractor because of the termination of work, the Contracting Officer shall pay the Contractor the amounts determined as follows...
>
> (1) For contract work performed before the effective date of termination, the total (without duplication of any items) of –
>
> (i) The cost of this work;
>
> ....
>
> (h) The cost principles and procedures of Part 31 of the Federal Acquisition Regulation, in effect on the date of this contract, shall govern all costs claimed, agreed to, or determined under this clause.

4. The FAR 31.201-1, "Composition of total cost" provision, in effect on the date of Contract 2399, stated in pertinent part: "(a) The total cost of a contract is the sum of the direct and indirect costs allocable to the contract, incurred or to be incurred, less any allocable credits," plus any allocable cost of money pursuant to 31.205.10.

2

5. FAR 49.206-2(b)(2), applicable to all contracts that provide for termination for the convenience of the government,[1] states in pertinent part that: "When the total-cost basis is used under a complete termination, the contractor must itemize all costs incurred under the contract up to the effective date of termination."

6. The FAR 52.214-26, AUDIT–SEALED BIDDING (APR 1985) clause of Contract 2399, states at paragraph (b)(2) that: "Records pertaining to appeals under the Disputes clause or to litigation or the settlement of claims arising under or relating to the performance of this contract shall be made available until disposition of such appeals, litigation or claims."

7. ESCI's 5 July 2012 total cost basis termination settlement claim was submitted for audit to the Defense Contract Audit Agency (DCAA) on 22 March 2013. On 24 February 2014, the DCAA issued a "DISCLAIMER OF OPINION" report. The stated reasons for the disclaimer included, among other things, that:

> Based upon the results of our adequacy evaluation, we determined that ESCI's July 5, 2012 termination for convenience settlement proposal does not comply with the requirements of FAR 49.206-2(b)(2) Bases for Settlement Proposals, and FAR 49.206-1(c), Submission of Settlement Proposals, and therefore, is inadequate.

> ESCI's termination for convenience settlement proposal was not prepared using actual costs incurred through the effective date of the termination, but instead was based on an estimated increased contract price.

(Bd. corr., DCAA Report)

8. On 4 April 2014, the government served 24 discovery requests on ESCI in the captioned appeal. On 14 April 2014, ESCI answered the request with argumentative allegations that the documents had already been provided to the government, or did not exist, or were irrelevant to the issues in the appeal. (Bd. corr.)

9. On 25 April 2014, the government moved for an order to compel discovery (Bd. corr.). On 20 May 2014 the presiding judge issued a discovery order stating in relevant part:

---

[1] *See* FAR 49.002.

3

> ESCI will deliver to the Atlanta DCAA Branch Office, no later than 20 June 2014, the responsive documents in a separate marked package for each of the following requests in the government's 24 April 2014 motion: Nos. 1, 2, 3, 5, 11, 12, 13, 14, 19, and 20. If ESCI has no responsive documents for a particular request, it shall so state in writing with its submission. After inspection and copy at the DCAA office, the government will return the submitted documents to ESCI. A single document "dump" by ESCI for all of the above-listed requests, without a separate package of documents for each request, or inclusion of clearly non-responsive documents in a package for a particular request, will be considered a non-compliance with this order.
>
> ....
>
> For any non-compliance with the foregoing orders, the Board will entertain a motion for appropriate sanctions, up to and including dismissal of the appeal.

(*Id.*)

10. On or about 25 June 2014, ESCI submitted its response to the presiding judge's 20 May 2014 order. ESCI's response provided no documents, explanation or other response to four of the ten production requests for which a response was required by the 20 May 2014 order. Those four requests were: Request No. 12 for "copies of all purchase orders for costs incurred under the subject contract"; Request No. 13 for "copies of all receipts for costs incurred under the subject contract"; Request No. 14 for "copies of all subcontractor and vendor agreements relating to this contract"; and Request No. 19 for "a complete list of the witnesses you intend to call at trial." The six requests in the 20 May 2014 order for which some substantive response was provided by ESCI and the response to each are set forth in SOF ¶¶ 11-20 below.

11. Request No. 1 was: "Provide a complete, legible copy of the actual record you used to contemporaneously accumulate and track the actual costs expended for this contract." ESCI's response was:

> **No. [sic] such record was required under the contract and was not developed.**

4

For the appellant's CDA claim as part of the Termination for Convenience (T4C) claim, appellant used the subcontract agreement and the request for equitable adjustment (REA) claim documentation to track additional costs related to appellant's CDA claim. Appellant used the Fixed Price Bid Cost Break Down by Work Division: (See Letter Dated September 20, 1995). Also there were invoices submitted to government used to track the earned contract work.

All included in the **Item No. 1 Response Package)**

12. The documents submitted by ESCI in its Item No. 1 response package do not individually or collectively accumulate and track the actual costs expended on the contract. Moreover, although ESCI denies in its response that it "developed" a record to "accumulate and track the actual costs expended for this contract," the table of contents in each of its annual corporate financial statements for the years 1995, 1996 and 1997, show a "SCHEDULE OF JOB REVENUE AND COSTS" as an item in the statement. [2]

13. Request No. 2 was: "Provide a complete, legible copy of your current list of actual costs expended for this contract; state the date on which such list was compiled and identify who compiled it." ESCI's response was:

> No. [sic] such record was required under the contract and was not collected. The contract did not require ESCI to perform this line of work. For the appellant's CDA claim as part of the T4C claim there are bilateral contract modification, pre-termination costs and post-termination costs related to appellant's T4C claims. **(See Packages in Item #20)**

14. The documents submitted in ESCI's response to Request No. 2 including those in the Packages in Item 20 do not individually or collectively provide a current list of actual costs expended on the contract. Some of the separate packages of documents submitted by ESCI under Request No. 20 include canceled checks or invoices indicating payment to suppliers and subcontractors for work under Contract 2399, but there is no current list of the actual incurred costs of the contract. The total

---

[2] The "SCHEDULE OF JOB REVENUE AND COSTS" for the year 1995 was inadvertently disclosed by ESCI in its otherwise non-responsive submission of documents for Production Request No. 3 (*see* SOF ¶ 15).

amount of the cancelled checks and invoices marked paid in the documents submitted in response to Request No. 20 was $143,050.08.

15. Request No. 3 was: "Provide a complete, legible copy of ESCI's general corporate ledger for the years 1995 through 1998; make the original available for inspection by the government." ESCI's response was: "There is Package Cover Sheet Item #3 Containing ESCI's Corporate Financial Statements, 1995, 1996, 1997, 1998." The annual corporate financial statements may have been prepared in part from data recorded in the general corporate ledger but they were not the ledger itself. ESCI provided no explanation for its failure to provide the requested general corporate ledger or copy thereof.

16. Request No. 5 was: "Provide complete, legible copies of all payroll records and time-keeping records for this contract, including, but not limited to, all certified payrolls for ESCI and each subcontractor." ESCI's response was: "Due to passage of time and after eighteen (18) years most of the records could not be located. The ones located are enclosed as **Package Cover Sheet Item # 5** Some Employees Payroll Records."

17. The documents submitted in response to Request No. 5 are 423 pages of which only 16 pages are identifiable on their face as payroll for direct labor on Contract 2399. Twelve of these 16 pages are a subcontractor's weekly payrolls, required for compliance with the Davis Bacon Act, totaling $4,439.50 for the period 12 December 1996 to 5 February 1997 (ESCI Response, tab 5 at 86-97). Although ESCI claims $1,021,306 for "DIRECT LABOR" on its SF 1436 total cost basis termination settlement claim, there are no Davis-Bacon Act weekly payroll records for ESCI's direct labor on the contract in its response to Request No. 5.[3] Three pages in the response are time sheets of an ESCI employee working directly on Contract 2399 during the weeks of 9, 16, and 23 February 1996 with a gross pay amount of $1,553.79 (*id.* at 267-68, 271). One page in the response is the time sheet of another ESCI direct employee charging 4.5 hours at a gross payroll amount of $45.00 to "NWS-Project" on 9 September 1996 (*id.* at 105).

18. Request No. 11 was: "Provide complete, legible copies of all invoices for costs incurred under the subject contract; make the originals available for government inspection." ESCI's response was: "Don't have all the invoices. There are invoices from subcontractor Rickmond related to post-termination for convenience costs and

---

[3] Contract 2399 included the FAR 52.222-6, DAVIS-BACON ACT (FEB 1995) clause and the FAR 52.222-8, PAYROLLS AND BASIC RECORDS (FEB 1988) clause (ASBCA No. 51722, R4, tab 1 at 66).

changed work for appellant's termination for convenience package. **Package Item No. 11**."

19. The 54 pages of documents submitted by ESCI in its response package to Item No. 11 are 19 pages of invoices of Rickmond Environmental, Inc., and 35 pages of change order and other pricing documents either supporting those invoices or proposals for payments on change orders. The Rickmond invoices were dated from 9 December 1996 to 18 July 1997 for work performed as a subcontractor under Contract 2399. The total amount billed to ESCI on these invoices was $147,059.60. The total amount of payments by ESCI to Rickmond recorded on these invoices was $13,680.

20. Request No. 20 was: "Provide complete, legible copies of each of the documents you brought with you to the DCAA audit 'walk through' in connection with that agency's adequacy review of your termination for convenience claim under the subject contract; make the original documents available for government inspection." ESCI's response was the submission of 612 pages of documents in numbered packages, with description of contents and number of pages as follows:

> 20-1 Bond/Insurance Costs related to post-termination cost (13 pages).
> 20-2 Contractor Production Report, Labor Hours/ Equipment @ Site Work (2 pages).
> 20-3 Changed Work May 28, 1996 (4 pages).
> 20-5 Sub Contractor Production Report/Labor/ Equipment 1996/1997 (19 pages).
> 20-6 Terminated (Unfinished) Work Amount (4 pages).
> 20-7 Unpaid Completed Work at Fixed Contract Price (16 pages).
> 20-8 Contract Modification for Changed Work PCO-01 (23 pages).
> 20-9 Pre-Termination Contract Work Labor Costs Source 6/1997–6/1998 (73 pages).
> 20-10 Post-Termination Unrelated to T4C Settlement Cost Source (7/1997 through 05/1998) (148 pages).
> 20-11 Unpaid invoices by the government (30 pages).
> 20-12 Sub Contractor invoices for work directed by the government (11 pages).
> 20-13 List of outstanding payments due in June 23, 1997 Invoice No. 7 (61 pages).
> 20-14 Bond and Insurance source claim (212 pages).

21. While a significant number of the submitted documents for Request No. 20 had no relevance to ESCI's termination settlement claim (e.g. 123 pages in package 20-14 that related to contracts other than Contract 2399), all of the submitted documents literally met the request for all documents that ESCI had brought to the "walk-through" with the DCAA of its termination settlement claim.

## DECISION

The Board's 20 May 2014 discovery order required ESCI to comply with Production Request Nos. 1, 2, 3, 5, 11, 12, 13, 14, 19 and 20 of the government's discovery requests of 4 April 2014. The Board's order further provided that: "inclusion of clearly non-responsive documents in a package for a particular request, will be considered a non-compliance with this order." (SOF ¶ 9) The documents submitted for the government's Request Nos. 1, 2, and 3 were clearly not responsive to those requests. The documents submitted for Request No. 1 did not accumulate and track the actual costs expended on the contract. The documents submitted for Request No. 2 did not provide a current list of actual costs expended for the contract. The documents submitted for Request No. 3 were not the general corporate ledger for the years 1995-1998. (*See* SOF ¶¶ 9-13)

With respect to Production Request Nos. 1 and 2, ESCI contends that the contract did not require it to maintain a record of actual costs expended on the contract. We disagree. ESCI is claiming a total cost basis termination for convenience settlement determination by the contracting officer. For ESCI's total cost termination settlement claim that was not settled by agreement of the parties, the contract Termination clause at paragraph (f)(1)(i) required the contracting officer to determine "the cost of this work" (SOF ¶ 3). Paragraph (h) of the Termination clause stated that FAR Part 31 "shall govern all costs claimed, agreed to, or determined under this clause" (SOF ¶ 3). FAR 31.201-1 defined the total cost of a contract as "the sum of the direct and indirect costs allocable to the contract, incurred or to be incurred, less any allocable credits, plus any allocable cost of money pursuant to 31.205.10" (SOF ¶ 4). FAR 49.206-2(b)(2) required that for a total cost termination settlement claim "the contractor must itemize all costs incurred under the contract up to the effective date of the termination" (SOF ¶ 5).

ESCI also contends in its responses to Request Nos. 1 and 2 that it did not in fact maintain job cost records (SOF ¶¶ 11, 13). This contention however is shown to be mistaken by ESCI's own corporate financial statement for the years 1995, 1996 and 1997 when Contract 2399 was being performed (SOF ¶ 12).

The documents submitted for the government's Production Request Nos. 5 and 11 were in each case a mixed bag of responsive and non-responsive documents. Four

8

hundred and seven (407) of the 423 pages in the submittal for Request No. 5, and 35 of the 54 pages in the submittal for Request No. 11 were non-responsive to the request. (SOF ¶¶ 17, 19) The "passage of time" does not excuse ESCI's inability to provide the payrolls for Request No. 5. The Audit–Sealed Bidding clause of the contract required ESCI to retain records pertaining to the appeal until disposition of the appeal (SOF ¶ 6). The inclusion of the non-responsive pages in the submittals for Request Nos. 5 and 11 were clear non-compliances with the Board's order.

For Production Request Nos. 12, 13, 14 and 19, ESCI's response was silence. No purchase orders, no receipts for costs incurred, no subcontractor or vendor agreements, and no list of witnesses intended to be called at hearing were provided in response to the specific requests (SOF ¶ 10).

On this record, we find substantial non-compliances with the Board's order. Our longstanding authority to impose sanctions for non-compliance with our discovery orders is set forth in *Turbomach*, ASBCA No. 30799, 87-2 BCA ¶ 19,756 at 99,953-54 as follows:

> It cannot be disputed that this Board has the inherent power to control the discovery process in appeals before it. We have implemented this authority, in part, with Rules 31 and 35.[4] Our power to impose sanctions is broad and may even extend to dismissal of an appeal. *Metadure Corp. v. United States*, 6 Cl. Ct. 61 (1984). We have issued orders prohibiting the introduction of evidence (*Arcon Pacific Contractors*, ASBCA No. 25057, 81-2 BCA ¶ 15,225; *Integrity Management International, Inc.*, ASBCA No. 18289, 75-1 BCA ¶ 11,235), prohibited the calling of witnesses (*Industrial Design Laboratories, Inc.*, ASBCA No. 21603, 80-1 BCA ¶ 14,269), and drawn adverse inferences (*Bromley Contracting, Inc.*, ASBCA No. 20271, 77-2 BCA ¶ 12,715). Thus, the Board has available to it, and has used, a variety of sanctions designed to enforce compliance with our Rules and orders and secure the just and expeditious resolution of the disputes before us.

---

[4] Now Rules 16 and 17.

An appropriate sanction for ESCI's non-compliances with the Board's 20 May 2014 discovery order is that no documents or testimonial evidence, other than the testimony of Mr. Nwogu, that should have been, but were not disclosed by ESCI in its response to the discovery order will be allowed to be offered by appellant for admission into evidence at the hearing.

Dated: 23 October 2014

MONROE E. FREEMAN, JR.
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58343, Appeal of Environmental Safety Consultants, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

10