NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**AVANT ASSESSMENT, LLC,**
*Appellant*

**v.**

**SECRETARY OF THE ARMY,**
*Appellee*

---

2018-1235

---

Appeal from the Armed Services Board of Contract Appeals in No. 60619, Administrative Judge Timothy Paul McIlmail.

---

Decided: November 9, 2019

---

DIRK DENSFORD HAIRE, Fox Rothschild, LLP, Washington, DC, for appellant. Also represented by, KELSEY MARYHELEN O'BRIEN; ALEXA SANTORA, Chicago, IL.

ANDREW W. LAMB, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for appellee. Also represented by MARTIN F. HOCKEY, JR., ROBERT EDWARD KIRSCHMAN, JR., JOSEPH H. Hunt.

---

Before LOURIE, BRYSON, and WALLACH, *Circuit Judges.*

BRYSON, *Circuit Judge.*

This appeal from a decision of the Armed Services Board of Contract Appeals ("ASBCA" or "Board") challenges the Board's exclusion of evidence offered by the appellant Avant Assessment, LLC ("Avant"). *See Appeals of Avant Assessment, LLC,* ASBCA No. 58903, 17-1 B.C.A. (CCH) ¶ 36837 (Aug. 21, 2017). We hold that the Board did not abuse its discretion in denying the admission of the evidence in the form in which it was offered, and we therefore affirm.

## BACKGROUND

In 2011, Avant was awarded a series of contracts with the Department of the Army ("Army"). The contracts called for Avant to deliver to the Defense Language Institute test materials to be used in its Defense Language Proficiency Test for testing proficiency in 12 foreign languages. The contracts called for Avant to produce approximately 12,000 such items, consisting of questions, answers, and related information for written and oral language examinations. The contract at issue in this case, contract 40, was one of those contracts. It required Avant to produce approximately 3,150 test items.

Contract 40 required that the test items be of "high quality," and it authorized the Army to reject unacceptable items. The solicitation explained that the contract would carry "a potentially high rejection rate" for the test items, based on a historical rejection rate of about 33 percent, and that the Army would pay only for delivered items that were accepted. The solicitation added that the government reserved the right to modify the delivery schedule due to higher or lower rejection rates. As provided by the contract, the Army notified Avant of all rejected items and provided explanations to Avant as to the reasons for each rejection. During the contract period,

the government rejected 2,255 test items of the 5,405 items that Avant delivered in order to reach the contract requirement of 3,150 acceptable items.

In late 2013 to early 2014, Avant submitted claims under several of the related contracts, including contract 40. With regard to contract 40, Avant contended that the Army had improperly rejected many of the test items based on "subjective and indefinite specifications." In its claim, Avant requested compensation for only the number of test items that were rejected in excess of a 30 percent rejection rate. Avant demanded an equitable adjustment of approximately $1.9 million for the alleged breach.

In July 2016, Avant appealed the deemed denial of the claim regarding contract 40 by filing a complaint in the ASBCA. That appeal was consolidated with Avant's appeals from two other related contracts, and the matter was set for trial in October 2016.

The Army promptly submitted the initial ASBCA Rule 4 file. Under ASBCA procedures, the Rule 4 file consists of documents that, unless challenged or supplemented by the parties within 30 days, are considered as the record on which the Board will decide the case.[1] Avant did not submit the evidence that is at issue in this case within that 30-day period.

Before trial, the ASBCA issued an order stating that evidence presented at the hearing not already admitted under the Board's Rule 4 would be designated as "hearing exhibits," and that each party would be required to publish during the hearing any document the party wished the Board to review during the hearing.

---

[1] In addition to the Rule 4 file, the record also consists of the documents admitted into evidence as hearing exhibits and the hearing transcript. *See* ASBCA Rule 13(a).

At trial, during the testimony of its expert witness, Avant introduced three documents (exhibits 2, 3, and 4), which consisted of test items and feedback, including three of the rejected test items. Following the cross-examination of Avant's expert witness, Avant moved to admit into evidence as a single exhibit (exhibit 7) approximately 10,000 documents containing 40,000 pages. Avant represented that the documents in exhibit 7 consisted of a compilation of test items and feedback for all the items, including the rejected items that were delivered pursuant to contract 40 and the other two related contracts.

Avant's counsel argued that the documents should be admitted for purposes of later review after the trial. Avant's counsel explained that the 10,000 documents were prepared in the same manner as the documents in the three exhibits discussed by the expert at trial and that for that reason there should be no basis for a foundational objection to the documents.

The Army's counsel objected to the bulk admission of those documents for lack of authentication, lack of adequate notice, and, as to the items that had been accepted, lack of relevance.[2]

The Board denied the motion to admit the 40,000-page exhibit. The presiding judge explained that there are ways to seek admission of voluminous documents, but that the Board would not accept those documents on the terms offered by Avant, i.e., that the documents should be admitted by the Board subject to post-trial review. The

---

[2]   With regard to the lack of adequate notice, government counsel stated that his office had received those documents, which were contained in 17 boxes, only on the Thursday evening prior to the Monday trial date, and that he had not had an opportunity to review them.

presiding judge noted that the proposed procedure would be contrary to the Board's ordinary procedure under which the record is closed at the end of the hearing.

Subsequently, Avant introduced several exhibits that consisted of summary spreadsheets, one of which (exhibit 10) listed the items for which test questions and feedback had been prepared. That spreadsheet included items that had been accepted as well as those that had been rejected. It did not, however, show the contents of each of the items. Nor did the spreadsheet indicate which of the rejected items Avant was claiming to have been improperly rejected. The record was then closed without any further discussion of the 10,000-item exhibit 7.

In post-trial briefing, Avant argued that the Army had breached contract 40 by improperly rejecting test items and not cooperating with Avant. Avant argued in particular that the Army had the burden of proving that the rejections were proper and that the Army had not satisfied that burden. Therefore, Avant argued that it did not need to introduce the 10,000 documents in exhibit 7. With respect to its claim for an equitable adjustment, Avant contended that it was entitled to compensation for all of the rejected test items in excess of a 30 percent rejection rate.

Quoting prior Board precedent, the Board stated that although the burden was on the Army to show that the rejected items were non-conforming, Avant first had to "take the minimal step of pointing out the specific instance or instances of alleged improper rejection[s]." *Avant Assessment*, 17-1 B.C.A. (CCH), at 179,513 (quoting *Appeal of Alliance Props., Inc.*, ASBCA No. 25610, 84-1 BCA ¶ 17,101 (Dec. 27, 1983)). Because Avant had not identified the particular test items that it was claiming were improperly rejected, the Army argued that it had no way to know which items were in dispute and did not bear the burden of justifying its rejections of every rejected

item, regardless of whether the particular rejections were disputed. As for the alleged failure to cooperate, the Army argued that it had used a rigorous objective test to judge the submitted test items and that it had worked with Avant throughout the submissions process, by offering guidance and feedback on every item.

The ASBCA rejected Avant's appeal. In response to Avant's claim that the Army had failed to provide sufficient guidance, the Board found that Avant had received written feedback on every item, but "Avant found itself too busy to review that feedback." *Avant Assessment*, 17-1 B.C.A. (CCH), at 179,512. In response to Avant's claim that the government had failed to meet its burden of showing that particular rejections were proper, the Board held that Avant was required, "in the first instance, [to] identify the particular test items that it contended were improperly rejected." *Id.* at 179,514. Avant could have done that, according to the Board, by using at least the exhibit 10 spreadsheet to identify the particular items that were improperly rejected. Avant, however, had failed to do so, and the Board therefore held that Avant had lost its opportunity to challenge the government's rejections on an item-by-item basis.

## DISCUSSION

On appeal to this court, Avant argues that the ASBCA abused its discretion by refusing to admit exhibit 7, the 40,000-page collection of all accepted and rejected test items for all three contracts that were the subjects of the appeal before the Board. We hold that the Board did not abuse its discretion in refusing to admit that exhibit.

### A. Standard of Review

We evaluate ASBCA evidentiary rulings and case management decisions for "abuse of discretion." *Johnson Mgmt. Grp. CFC, Inc. v. Martinez*, 308 F.3d 1245, 1252 (Fed. Cir. 2002) (applying "abuse of discretion" standard

to ASBCA evidentiary ruling); *Metadure Corp. v. United States*, 6 Cl. Ct. 61, 67 (1984) ("[T]he case management authority of the ASBCA's administrative law judges is no different from that of federal trial courts which, by virtue of their case management authority, are given broad discretion to manage the litigation on their dockets.").

## B. The Board Did Not Abuse Its Discretion In Denying The Admission of Evidence

The Board reasonably concluded that Avant had failed to take the steps necessary to admit exhibit 7, or at least components of that exhibit, into evidence. First, Avant failed to include exhibit 7 in the administrative Rule 4 file prior to the hearing. Second, as the Board pointed out, Avant could have offered a summary of the rejected items through the mechanism afforded by Rule 1006 of the Federal Rules of Evidence, which permits the use of a summary "to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. Similarly, Avant might have been able to take advantage of Rule 703 and have its expert testify regarding the contents of exhibit 7 if the expert had reviewed its contents and was prepared to testify about the allegedly improper rejections. Avant did not, however, propose that option for introducing the substance of the exhibit.[3] Finally, Avant could have attempted to demonstrate breach on the part of the Army by randomly sampling the rejected items and showing that many of the randomly selected rejections were improper, but it did not attempt to do so.

---

[3] In making evidentiary rulings, the Board is guided by the Federal Rules of Evidence, although it is not strictly limited by those rules and can admit evidence "in the sound discretion of the presiding Administrative Judge or examiner." ASBCA Rule 10(c).

The admissibility of exhibit 7 in the form in which Avant offered it presented several problems. First, the 40,000-page collection of documents, which occupied 17 boxes, was obviously unwieldy.

Second, Avant did not produce the exhibit to government counsel until the Thursday prior to the Monday trial. The government attorney reasonably complained that he had not had an opportunity to review the contents of that exhibit in the short time available.

Third, Avant did not authenticate the 10,000 documents in exhibit 7 at trial or offer to do so. Instead, Avant merely offered to have the exhibit 7 materials submitted to the Board for purposes of post-trial briefing. Thus, Avant proposed not to have the contents of exhibit 7 authenticated and formally admitted at trial, but to have the materials available to Avant in the post-trial briefing and to allow the government to object to the admission of the cited documents at that time.

The Board acted within its discretion in rejecting Avant's proposed course of action, as it would have bypassed any in-trial examination of the admissibility of the documents and deprived the government of an in-trial opportunity to contest the claimed impropriety of the rejections on a case-by-case basis.[4] In addition, Avant's proposal would have been contrary to the Board policy that, except as otherwise ordered, "no evidence will be received after completion of an oral hearing." ASBCA Rule 13(c).

---

[4] Avant argues that the Board could have invoked Rule 901(b)(3) or 901(b)(4) of the Federal Rules of Evidence to authenticate the documents in exhibit 7. Avant, however, does not suggest that it proposed that option at trial; instead, it raises that possibility on appeal, apparently for the first time.

As for Avant's claimed need to use the materials in exhibit 7, the Board explained that Avant could have shifted the burden of proof to the government to justify the rejections if Avant had merely pointed out those items that it regarded as improperly rejected. However, Avant failed to do so. The spreadsheet of all of the delivered test items, exhibit 10, included all of the 2,255 rejected items under contract 40. Avant could have satisfied what the Board referred to as the "minimal" requirement of pointing out the specific instances of improper rejection merely by itemizing the allegedly improper rejections from that spreadsheet, without the need to explain why each of those rejections was improper. Avant, however, failed to take even that minimal step, even though prior Board law made clear that Avant could have satisfied its burden of pointing out the allegedly improper rejections by doing so. *See Appeal of Alliance Props., Inc.*, ASBCA No. 25610, 84-1 BCA ¶ 17,101 (Dec. 27, 1983). In light of the other means that Avant could have used to meet its minimal initial burden of identifying the test items that it claimed were improperly rejected, we hold that it was not an abuse of discretion for the Board to deny Avant's request to admit the 40,000-page exhibit 7 for use in post-trial briefing.

Although Avant argues that the Board unreasonably required it "to tie each one of the 2,255 total rejections to a particular violation of the Contract's criteria for acceptance," that is not what the Board did. Instead, the Board stated that "[w]hen the government rejects work as not in compliance with its specifications, the burden is upon the government to demonstrate that fact; otherwise, the contractor is entitled to an equitable adjustment. . . . However, as a first step in challenging the rejection of items for alleged noncompliance, the contractor must take the minimal step of pointing out the specific instance or instances of alleged improper rejection." *Avant Assess-*

*ment*, 17-1 B.C.A. (CCH), at 179,513 (internal quotation omitted).

As characterized by the Board, the initial burden imposed on the contractor merely requires the contractor to point to the particular item or items that were, in the contractor's view, improperly rejected; it does not, as Avant argues, require the contractor to prove its case that the rejection was improper or even to set forth a theory for why the rejection was improper. Because Avant did not even point to the particular items within the 2,255 rejected test items that it regarded as improperly rejected, the Board properly held that the burden of justifying the rejections did not shift to the government. For that reason, it was not error for the Board to hold that it was unnecessary to address Avant's contention that the Army's rejection of at least some of the 2,255 rejected test items was improperly based on subjective criteria.

Finally, Avant contends that, in light of the estimate in the solicitation that historical experience suggested that about 33 percent of the test items could be expected to be rejected, Avant should recover damages for all rejections in excess of the 30 percent rejection figure that Avant built into its bid.

That argument is clearly meritless. The 33 percent figure set forth in the solicitation was an estimate based on past experience. It was not a promise by the Army that the rejection rate would not rise above a certain percentage of the submitted items, or that Avant would be paid for any rejected items in excess of that percentage, regardless of the quality of the delivered items. Avant's argument, if accepted, would mean that even if every one of its delivered test items was indisputably flawed, Avant would still be entitled to be paid for all of the rejected items exceeding the 30 percent rejection rate. No plausible reading of the contract would justify such a result.

CONCLUSION

We therefore uphold the decision of the ASBCA rejecting Avant's appeal.

**AFFIRMED**